Christopher Beau Harris v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS.  2-02-409-CR

2-02-410-CR

CHRISTOPHER BEAU HARRIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

I.  Introduction

A jury found Appellant Christopher Beau Harris (“Harris”) guilty of two counts of sexual assault 
and assessed his punishment for each count at
 eight years’ confinement and a $4,000 fine.  
The trial court ordered the sentences served concurrently.  In three points on appeal, Harris contends that the trial court violated his state and federal constitutional right to a fair trial by allowing the State to ask improper commitment questions during voir dire, by permitting the testimony of a witness who had violated “the Rule,” and by overruling his objections to improper prosecutorial jury argument.
  We will affirm.

II.  Background Facts

In the fall of 2001, Brandy Cohrs (“Cohrs”) was visiting the Londonderry Oaks Apartments in Denton, Texas, when she met and had a brief conversation with Harris.  Harris lived at the apartments and was employed as a maintenance man for the apartment complex.  Approximately five days after her initial conversation with Harris, Cohrs called Harris and agreed to visit him at his apartment. 
 After Cohrs arrived at Harris’s apartment, Harris and Cohrs watched television and subsequently engaged in consensual sex.  Cohrs also engaged in consensual sex with Harris on at least one more occasion.  However, during the course of the third sexual encounter, the sex became nonconsensual when Cohrs voiced her opposition to Harris by “crying and saying no.”  Approximately five days later, on or about October 14, 2001, Harris called Cohrs, and she agreed to come to his apartment.  After arriving at Harris’s apartment, Cohrs and Harris sat on the couch together and watched television.  At some point, Harris attempted to take off Cohrs’s pants, to which she responded, “I don’t think we should have sex.”  Although Cohrs attempted to keep her pants pulled up, she eventually lost her grip, and Harris was able to pull both her pants and her underwear down.  Harris told Cohrs that he wanted to be inside her, and although Cohrs told him “no” at least three times, Harris nonetheless sexually assaulted her.  During the assault, Cohrs did not struggle because she was concerned that Harris would become violent, but she continued to tell Harris “no.”  Subsequent to the assault, Harris called Cohrs on several occasions, but Cohrs never saw Harris in person again.  On or about November 7, 2001, Cohrs reported the assault to the police upon the insistence of a friend.

Meanwhile, in October 2001, Cassie Hayes (“Hayes”) moved into the Londonderry Oaks Apartments and became acquainted with Harris through a mutual friend, Joe Rodriguez (“Rodriguez”).  Thereafter, on occasion Hayes and Rodriguez would go to Harris’s apartment to talk and to hang out.  On November 15, 2001, Hayes and Rodriguez went over to Harris’s apartment for a short period of time, wherein Hayes mistakenly left her purse on his couch. Later that evening, Harris telephoned Hayes on her cell phone to tell her that she had forgotten her purse, and she walked across the complex to his apartment.  As Hayes entered the apartment, Harris shut the door behind her and locked the deadbolt.  Hayes immediately asked Harris, “What the hell are you doing?”  Harris responded, “Just relax, girl” as he pushed her down on the couch by her shoulders and positioned himself on top of her.  Although Hayes repeatedly told Harris to stop and get off of her, Harris continuously kept telling her to relax.  Harris pinned Hayes by holding her down with his entire body weight, and sexually assaulted her.  Eventually, Harris received a call on his cell phone and sat up on the end of the couch to talk.  While Harris was on the phone, Hayes got up and went to the door.  As Hayes was unlocking the deadbolt, Harris put his hand in front of her and said, “Wait, girl,” but she was nonetheless able to leave his apartment.  For several weeks, Hayes did not report the assault to the anyone, including the police, but she constantly feared Harris because he was the maintenance man and had access to a passkey to her apartment.  After receiving a late-rent notice inside her apartment, Hayes reported the assault to Brendan Durkin (“Durkin”), the head maintenance man, and Emily Bell, the apartment manager.  Thereafter, in December 2001, Hayes reported the assault to the police and identified Harris as her assailant.

III.  Improper Commitment Questions During Voir Dire

In his first point, Harris contends that the trial court denied him a fair trial by allowing the State to ask three improper commitment questions during voir dire.  
Harris complains that the State improperly committed prospective jurors to convict based upon the following three questions:

(1) “If--[W]ould you disbelieve a witness simply because there was a delay in the reporting of the crime?”
(footnote: 1)
 

(2) “Does anybody believe that they would not be able to find somebody guilty of a criminal offense without having medical evidence?”
(footnote: 2)

(3) “How many people if selected on the jury could not find somebody guilty based upon the testimony of just one witness, even if you believed that one witness beyond a reasonable doubt?”

The State contends that the aforementioned questions were proper because all three of the questions could lead to a valid challenge for cause.

A.  Standard of Review

The trial court has broad discretion over the process of selecting a jury.  
Barajas v. State
, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).  Therefore, appellate courts should not disturb a trial court’s ruling on the propriety of a particular question during voir dire absent an abuse of discretion.  
Id.
;
 Davis v. State
, 894 S.W.2d 471, 474 (Tex. App.—Fort Worth 1995, no pet.).  A trial court abuses its discretion if it prohibits a proper question regarding a juror's views on an issue applicable to the case.
  Howard v. State
, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996).  Additionally, a trial court abuses its discretion if it allows a question that attempts to commit the juror to a particular verdict based on a set of circumstances analogous to the case in question.  
See Atkins v. State
, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997).  However, if the law requires a certain type of commitment from jurors, an attorney may ask the prospective jurors whether they can follow the law in that regard.  
Standefer v.
 
State
, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001).

B.  Analysis of the Questions

In 
Standefer
, 
the Texas Court of Criminal Appeals articulated a three-prong test for determining when a voir dire question calls for an improper commitment.  
Id
. at 179-84.  The first prong of the test requires trial courts to determine whether a particular question is a commitment question.  
Id
. at 179. If the court determines that a particular question is a commitment question, the court must then decide whether the question gives rise to a valid challenge for cause.  
Id
. at 181-82.  If the question meets the “challenge for cause” requirement, the court must then determine whether the question includes 
only
 those facts necessary to test whether a prospective juror is challengeable for cause.  
Id
.  

1.  Prong One—Were the State’s Questions “Commitment Questions”?

A commitment question is a question that “commit[s] a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact.”  
Id
. at 179.  Commitment questions that attempt to bind prospective jurors to a position, using a hypothetical or otherwise, are improper and serve no purpose other than to commit the jury to a specific set of facts before the presentation of any evidence at trial.  
Atkins
, 951 S.W.2d at 789. However, as acknowledged by the Texas Court of Criminal Appeals
, the rule prohibiting the use of commitment questions during voir dire is easily stated but not necessarily easily applied.  
Standefer
, 59 S.W.3d at 179.  
In 
Lydia v. State
, the court of criminal appeals recently clarified the scope of the “commitment question” rule
, holding that the question “Do each of you feel as though you could evaluate a witness and his testimony and decide if he’s being truthful without automatically dismissing his testimony because of some criminal history?” was a commitment question. 
 109 S.W.3d 495, 498-99 (Tex. Crim. App. 2003).  The court reasoned that the question attempted to commit the prospective jurors to resolve the issue of witness credibility based on a particular fact—the witness’s criminal history. 
 
Id
. at 499.

In the present case, the State’s questions required prospective jurors to resolve the issue of whether they would automatically be predisposed towards one view on witness credibility based on the witness’s delay in reporting the crime, whether they could convict a defendant where there was no medical or scientific evidence presented, and whether they could convict a defendant based solely upon the testimony of one witness.  Therefore
, pursuant to the reasoning set forth in 
Lydia
, all three questions posed by the State were commitment questions because they required prospective jurors to commit to convict a defendant or to resolve issues concerning witness credibility under a particular set of facts—the witness’s delay in reporting the crime, the absence of medical or scientific evidence, and the testimony of only one witness.  
Id
. at 499; 
see also Standefer, 
59 S.W.3d at 180 (holding that question “Could you consider probation in a case where the victim is a nun?” was a commitment question).  However, whether the questions were proper requires further inquiry to determine if each question could give rise to a valid challenge for cause.

2.  Prong Two—Did the State’s Questions Lead to Valid Challenges? 

The primary objective of voir dire examination is to assemble a “competent, fair, impartial, and unprejudiced jury to judge the facts of the case.”  
Staley v. State
, 887 S.W.2d 885, 896-97 (Tex. Crim. App. 1994),
 cert. denied
, 514 U.S. 1020 (1995).  Accordingly, the Texas Code of Criminal Procedure allows either side to challenge a juror for cause when the challenging side can show the juror is incapable or unfit to serve on the jury.  
Tex. Code Crim. Proc. Ann. 
art. 35.16 (Vernon Supp. 2004).  A prospective juror may be challenged for cause if he possesses a bias or a prejudice in favor of or against the defendant that prevents him from impartially judging the credibility of a witness.  
Id
. art. 35.16(a)(9).  
However, a prospective juror
 is not challengeable for cause based on bias simply because he would be more skeptical of a certain type of witness.  
Jones v. State
, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998), 
cert. denied
, 528 U.S. 985 (1999).  A challenge for cause is only proper based on bias if a prospective juror harbors an automatic predisposition toward one view of witness credibility based upon knowledge of a certain fact about the witness.  
See, e.g., Hernandez v. State
, 563 S.W.2d 947, 950 (Tex. Crim. App. 1978) (op. on reh’g) (holding that prospective juror is challengeable for cause because he did not believe a police officer would ever lie on the stand); 
Edwards v. State
, 882 S.W.2d 493, 495 (Tex. App.—Houston [1
st
 Dist.] 1994, no pet.) (recognizing that prospective juror is challengeable for cause if he indicates that he would automatically disbelieve the testimony of a witness shown to have previously lied). 

In the present case, the State inquired as to whether any of the prospective jurors would disbelieve a witness simply because the witness delayed in reporting the crime.  The question as posed did not focus on the level of credibility that the prospective jurors would give the witness’s testimony, but rather sought to ascertain whether any of the prospective jurors harbored any automatic predispositions or held any extreme or absolute positions regarding the credibility of a witness due to a witness’s delay in reporting a crime.  Thus, the potential answers to the first question would lead to a challenge for cause based on a juror’s bias. 
 See
 
Tex. Code Crim. Proc. Ann.
 art. 35.16(a)(9).
 

The second question asked by the State during voir dire was used to identify potential jurors who would not convict a defendant absent scientific or medical evidence even if they believed the testimony of the witnesses. Although the State may not bind a prospective juror to a specific set of facts, the State is permitted to determine whether a prospective juror will require evidence the law does not require to convict a defendant.  
Garza v. State
, 18 S.W.3d 813, 820 (Tex. App.—Fort Worth 2000, pet. ref’d).  Under Texas law, a conviction for a sexual assault may be attained absent any scientific or medical evidence.  
Id
.  Moreover, as the record indicates, at least four of the prospective jurors were removed for cause because they indicated that they could not convict a defendant without some scientific or medical evidence, even if the State otherwise proved its case beyond a reasonable doubt. Therefore, the State’s second question was a proper inquiry because it could and did give rise to a valid challenge for cause.

The State’s third question focused on whether the prospective jurors could convict a defendant based on the testimony of only one witness if they believed that witness beyond a reasonable doubt.  The State may challenge a juror for cause when the juror would hold the State to a higher standard than “beyond a reasonable doubt.”  
Coleman v. State
, 881 S.W.2d 344, 360 (Tex. Crim. App. 1994), 
cert. denied
, 513 U.S. 1096 (1995).
  Consequently, a prospective juror is properly subject to challenge for cause if he indicates that he could not convict based on the testimony of one witness, even if he believed that witness beyond a reasonable doubt.  
See Castillo v. State
, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995). However, a prospective juror is not challengeable for cause merely for setting their threshold for reasonable doubt higher than the minimum required by law, e.g., a prospective juror who would require the testimony of more than one witness to be convinced beyond a reasonable doubt.  
See id
.  In the present case, the State was entitled to inquire as to whether a prospective juror could abide by the standard of proof set by the law or if the juror would hold the State to a higher standard.  
See id
. at 534-35.  A negative response to the question posed by the State would properly give rise to a valid challenge for cause.  
See id.
 at 533.

Because we have determined that a negative answer to each of the State’s three questions would lead to a proper challenge for cause, we proceed to the third prong of 
Standefer
.

3.  Prong Three–Did the State’s Questions Include Only Necessary Facts? 
 Even if the State’s three questions meet the challenge for cause requirement, the questions may be improper if they include facts in addition to those necessary to establish a challenge for cause.  
Standefer
, 59 S.W.3d at 182.  The 
Standefer
 Court referenced 
Atkins 
as a decision for which a voir dire question impermissibly supplied more facts than necessary to sustain a challenge for cause.
  Id
.  In 
Atkins
, the State asked the prospective jurors the following question: “If the evidence, in a hypothetical case, showed that a person was arrested and they had a crack pipe in their pocket, and they had a residue amount in it, and it could be measured, and it could be seen, is there anyone who could not convict a person, based on that--.”  951 S.W.2d at 789. The Texas Court of Criminal Appeals stated that, although the State could have permissibly questioned the jurors on their ability to follow a law that holds a person guilty of possession even if the possession involved only a residue amount, the use of non-necessary facts supplied by the State—arrest, possession, crack pipe, item found in defendant’s pocket—rendered the question an improper commitment question.  
See id
. at 789-90.  The court reasoned that the question as posed by the State served “no purpose other than to commit the jury to specific set of facts prior to the presentation of any evidence at trial.” 
 Id
. at 789.

In the present case, the State’s three questions did not attempt to commit the prospective jurors in conjunction with specific facts of the case as in 
Atkins
.  The questions were not fact intensive, but rather only included
 those facts necessary to determine whether a prospective juror was challengeable for cause.  Therefore, the State’s three questions pass constitutional muster under the third prong of 
Standefer
.

C.  Proper Commitment Questions 

Accordingly, we hold that the trial court did not abuse its discretion by allowing the State to ask the three questions during voir dire.  The State’s questions were not designed to bind the prospective jurors to a position based on a particular set of facts, but only sought to elicit whether the jurors could impartially judge the credibility of a witness and follow the law.  Therefore, we overrule Harris’s first point.

IV.  Violation of “The Rule” 

In his second point, Harris contends that the trial court denied him a fair trial by permitting Tim Phillips (“Phillips”), an investigator for the Denton County District Attorney’s Office, to testify at the rebuttal stage of trial because he violated rule 614 of the Texas Rules of Evidence (“the Rule”).  He complains that Phillips violated the Rule by talking to defense witness Rodriguez and by being present in the courtroom during a majority of the trial, including part of Rodriguez’s testimony.  The State contends that the trial court properly allowed Phillips to testify over Harris’s objection because Phillips had no personal knowledge of the offenses and there was no reason to believe he would be called as a witness at the time the Rule was invoked. 

A.  The Rule

The Rule provides for the sequestration of witnesses from the courtroom during trial.  
Tex. R. Evid.
 614.  The purpose of the Rule is to prevent corroboration, contradiction, and the influencing of witnesses.  
Minor v. State
, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref’d).  Upon invocation of the Rule, a witness should not listen to testimony in the case or converse or comment about the case to any other person without the court’s permission.  
Id
.
  Although the trial court is obligated to exclude witnesses from the courtroom during the testimony of other witnesses, the trial court’s decision concerning a witness who has violated the Rule is discretionary. 
Minor
, 91 S.W.3d at 829.  Accordingly, if the Rule is violated, the trial court may, taking into consideration all of the circumstances, allow the testimony of the potential witness, exclude the testimony, or hold the violator in contempt. 
 Bell v. State
, 938 S.W.2d 35, 50 (Tex. Crim. App.1996)
, cert. denied
, 522 U.S. 827 (1997)
.  We review a trial court’s decision regarding a violation of the Rule under an abuse of discretion standard. 
Guerra v. State
, 771 S.W.2d 453, 474-75 (Tex. Crim. App. 1988), 
cert. denied
, 492 U.S. 925 (1989).

B.  Analysis of a Violation of the Rule

We perform a two-step analysis to ascertain whether a trial court has abused its discretion in allowing testimony by a witness who has violated the Rule.  
Minor
, 91 S.W.3d at 829.  The first step of the analysis requires us to determine what kind of witness was involved:  (1) a person who was not intended to be called to testify and who was not connected to the case-in-chief but who has, due to events during trial, become a necessary witness
; or (2) a person who had been sworn or listed as a witness in the case and either heard or discussed another’s testimony.  
Guerra
, 771 S.W.2d at 476.  A trial court does not abuse its discretion by allowing testimony from a witness who violates the Rule if the person was not anticipated to be called as a witness because he lacked personal knowledge regarding the offense and had no connection to either the State’s case-in-chief or the defendant’s case-in-chief.  
Id
.
; Minor
, 91 S.W.3d at 829; 
Phillips v. State
, 64 S.W.3d 458, 459-60 (Tex. App.—Houston [1
st
 Dist.] 2001, no pet.).  On the other hand, if the witness had personal knowledge of the offense and was clearly anticipated as a witness, the second step of the analysis requires us to determine whether the witness actually conferred with or heard the testimony of another witness, and consequently, whether the witness’s testimony contradicted the testimony of a witness he actually heard from the opposing side or corroborated the testimony of another witness he actually heard from the same side on an issue of fact bearing upon the issue of guilt or innocence.  
Guerra
, 771 S.W.2d at 475.  If both of the above criteria are met, then the trial court abused its discretion by allowing the testimony of the witness.  
Minor
, 91 S.W.3d at 829; 
Loven v. State
, 831 S.W.2d 387, 399 (Tex. App.—Amarillo 1992, no pet.).

In the present case, we must determine what kind of witness Phillips was.  
See Guerra
, 771 S.W.2d at 476.  Phillips became a State’s rebuttal witness due to a disputed issue concerning Rodriguez’s testimony.  During Harris’s case-in-chief, Rodriguez testified that Hayes and Harris engaged in a consensual “sexual relationship” prior to the sexual assault.  He also testified that Hayes had a bad reputation for truthfulness.  On cross-examination, the State asked Rodriguez if, after he learned that Harris was arrested for sexually assaulting Hayes, he apologized to Hayes for having introduced her to Harris. Rodriguez replied, “No, the [District Attorney] talked to me about that earlier, and I don’t recall ever apologizing.”  As a result, during rebuttal, the State called Phillips to testify regarding a conversation he and Rodriguez had about Rodriguez’s alleged apology.  Over Harris’s objection, Phillips subsequently testified that Rodriguez admitted he had apologized to Hayes for the incident. We hold that the trial court did not abuse its discretion in allowing Phillips to testify in violation of the Rule.  After Rodriguez denied apologizing to Hayes, Phillips’s testimony became necessary to rebut Rodriguez’s assertion.  Moreover, the record reflects that Phillips had no personal knowledge of the offenses and that there was no reason to believe he would be a witness in the trial at the time the Rule was invoked.  Therefore, it is unnecessary for us to proceed to the second step of the analysis.  Accordingly, we overrule Harris’s second point.

V.  Improper Jury Argument

In his third point, Harris contends the trial court denied him a fair trial by overruling his objections to improper prosecutorial argument during the guilt-innocence stage of trial.  Specifically, Harris complains that the State’s jury argument was improper because it shifted the burden of proof to the defense, attacked him over the shoulders of his counsel, and requested that the jury find him guilty due to community expectations.  The State, however, maintains that the prosecutor’s argument was proper as a summation of the evidence, a response to the defense’s argument, and a plea for law enforcement.

A.  Standard of Review

The purpose of closing argument is to facilitate the jury’s proper analysis of the evidence presented at trial in order to arrive at a just and reasonable conclusion based solely on the evidence.  
Barnes v. State
, 70 S.W.3d 294, 308  (Tex. App.—Fort Worth 2002, pet. ref’d).  To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.
 Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  
If a jury argument exceeds the bounds of proper argument, the trial court’s erroneous overruling of a defendant’s objection cannot be reversible error unless, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury’s verdict. 
 
Tex. R. App. P. 
44.2(b); 
Martinez v. State
, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); 
Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999)
.

B.  
Analysis of the State’s Jury Argument

Harris complains that the trial court erred by overruling his objections to  three improper comments made by the prosecutor during closing arguments at the guilt-innocence stage of trial.  Because Harris contends that each of the three comments was improper for different reasons, we will address each comment individually.

1.  Proper Summation of the Evidence

Harris first argues that the trial court erroneously permitted the State to shift the burden of proof to the defense based on the following exchange:

Look at the motive.  Do [the girls] have any motive whatsoever to come in here and tell you anything but the truth?  No.  They’re not gaining anything by coming here and talking about this.  Absolutely the most embarrassing thing has happened in their life or will happen in their life, and they have to come talk about it.  Do they have any motive?  No.  

The defense has subpoena power, the power to call any witness to come testify.  Anyone to say anything on how it might be possible for these girls to have some sort of motive to come in here and lie. 

[DEFENSE COUNSEL]:  I’ll object to the prosecutor’s attempt to shift the burden of proof.

THE COURT:  Overruled.  [Emphasis added].

The State contends that the argument was a summation of the evidence that was presented at trial.

It is well-settled law that the State is entitled to comment on an accused's failure to produce testimony from sources other than himself when it is relevant to a disputed issue.  
Patrick v. State
, 906 S.W.2d 481, 490 (Tex. Crim. App. 1995), 
cert. denied
, 517 U.S. 1106 (1996)
; 
Carrillo v. State
, 566 S.W.2d 902, 912 (Tex. Crim. App. [Panel Op.] 1978).  Moreover, a prosecutor’s comment about the subpoena power of a defendant is proper if it refers to the defendant's failure to produce evidence from other sources. 
Livingston v. State
, 739 S.W.2d 311, 338 (Tex. Crim. App. 1987), 
cert. denied
, 487 U.S. 1210 (1988).  Accordingly, a prosecutor’s comment is improper only if it points to the absence of evidence that could be supplied only by the defendant’s testimony.  
Fuentes v. State
, 991 S.W.2d 267, 275 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 1026 (1999). 

In the present case, the State’s argument was not an improper comment because it did not require Harris to personally rebut the State’s argument.  
On the contrary, as evidenced by reference to the defense’s “subpoena power,” the State’s comment specifically pointed out the lack of testimony from other witnesses concerning any motive for Hayes and Cohrs to falsely accuse Harris of sexual assault.  
See Fogle v. State
, 988 S.W.2d 891, 895 (Tex. App.—Fort Worth 1999, pet. ref’d) (recognizing that a defendant need not subpoena himself in order to secure his own testimony).  The comment was merely a summation of the evidence presented at trial, coupled with an argument that the jury should not be concerned with evidence not presented at trial—any motive for the girls to lie about the assault.  
See Benn v. State
, 110 S.W.3d 645, 650-51 (Tex. App.—Corpus Christi 2003, no pet.) (holding that the State’s comment, “You ought to consider not only who you heard, but who you didn't hear,” was a summation of the evidence);
 Doty v. State
, 820 S.W.2d 918, 923-24 (Tex. App.—Fort Worth 1991, pet. ref’d) (holding that the State’s comment that if there was any evidence to support the defense’s theory,”don't you think that they might have brought it to you,” was a summation of the evidence).

2.  Proper Response to Defense Counsel’s Argument

Harris also complains that the State attacked him over the shoulders of his counsel by interjecting inflammatory comments that were outside the record during rebuttal at the guilt-innocence stage of trial.  However, the State maintains that the comments were proper as a response to Harris’s closing argument.

During closing arguments, the defense revisited its contention that Phillips impermissibly discussed the case with Rodriguez after the Rule was invoked based on the following comments: 

[H]ere we have an agent of the State going and violating the Judge’s order and talking to him about the case when the Judge instructed him to only talk to the lawyers.  Yet we have this agent of the State going and talking to him.  

And, by the way, the agent of the State works for the State.  He’s paid by the State to prosecute and convict people.  He’s never, ever testified in his 20 something years of experience on behalf of an accused citizen.

The defense also intimated that both Hayes and Durkin were motivated to testify favorably for the State because they did not want to anger the State and risk probation revocation.
(footnote: 3)
 Thereafter, on rebuttal, the prosecutor made the following complained-of comments in reference to the defense’s closing argument:

[PROSECUTOR]: . . . The first thing I want to say is that [defense counsel] wants you to believe that we’ve called Ms. Hayes up here, told her to lie or we’re going to revoke a deferred adjudication on a theft by check case.

This isn’t a game.  This is real life.  We’re not up here prosecuting someone and trying to get people to come up and lie. 

They didn’t tell Brendan Durkin to come up here, if you don’t tell them this story and lie, we’re going to revoke your probation.  We subpoenaed him to come up here and tell how he remembers  things happening that time. 

When I took this job, I took an oath to see that justice is done.

[DEFENSE COUNSEL]:  Objection, argument outside the record.  It’s also inflammatory.

THE COURT:  I’ll sustain the objection.

[DEFENSE COUNSEL]:  And I’ll ask the jury to be instructed to disregard that comment.

THE COURT:  Please disregard the last comment by the prosecutor.

[DEFENSE COUNSEL]:  And I will further move for a mistrial.

THE COURT:  Denied.

[PROSECUTOR]:  
[Defense Counsel] has impugned my integrity as a prosecutor.

[DEFENSE COUNSEL]:  Objection.  That’s argument outside the record.  It’s prejudicial and inflammatory.

THE COURT:  Overruled.

[DEFENSE COUNSEL]:  And it’s also attacking my client over the shoulders of counsel, and I object to it on that basis.

THE COURT:  Overruled.

[PROSECUTOR]:  He insinuates to me that our investigator, Tim Phillips, was violating the Judge’s orders.  He was not violating the Judge’s orders.  The Judge let him testify.  [Emphasis added]. 

The State may not strike at a defendant over the shoulders of his counsel or accuse defense counsel of bad faith or insincerity during argument.  
Wilson v. State
, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996),
 abrogated on other grounds by Motilla v. State
, 78 S.W.3d 352 (Tex. Crim. App. 2002).  Uninvited and unsubstantiated accusations of misconduct directed at a defendant’s attorney are manifestly improper because they serve to inflame the minds of the jury to the defendant’s prejudice.  
McMurrough v. State
, 995 S.W.2d 944, 947 (Tex. App.—Fort Worth 1999, no pet.).  A prosecutor runs a risk of improperly striking a defendant over the shoulder of counsel when the argument personally impugns opposing counsel’s character.  
Mosley
, 983 S.W.2d at 259
.  It is manifestly improper and prejudicial to the defendant for a prosecutor to contrast the ethical obligations of prosecutors with those of defense attorneys.  
Id
. at 258.  

While defense counsel is protected from unwarranted attack by the prosecution, the prohibition “does not create a sanctuary to which defense counsel may retreat with immunity and thereby deny the prosecutor the right to reply to counsel’s argument.”  
Stokes v. State
, 506 S.W.2d 860, 864 (Tex. Crim. App. 1974).  Therefore, a prosecutor is entitled to respond to an argument by defense counsel that suggests impropriety on the part of the State.  
See Lange v. State
, 57 S.W.3d 458, 467 (Tex. App.—Amarillo 2001, pet. ref’d) (holding that prosecutor’s reference to having taken an oath to uphold justice was permissible response to defense counsel’s suggestion that prosecution had improperly coached witness); 
Sandoval v. State
, 52 S.W.3d 851, 858 (Tex. App.—Houston [1
st
 Dist.] 2001, pet. ref’d) (holding that it was permissible for the prosecutor to respond to defense counsel’s suggestion that the prosecution manipulated the testimony of a witness).  If a defense argument goes outside the record, the “invited argument rule” permits a prosecutor to respond so long as the prosecutor’s argument does not exceed the scope of the invitation. 
Johnson v. State
, 611 S.W.2d 649, 650 (Tex. Crim. App. [Panel Op.] 1981).  

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for a mistrial, the issue is whether the trial court erred in denying the mistrial.  
Faulkner v. State
, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d) (op. on reh’g).  Its resolution depends on whether the trial court’s instruction to disregard cured the prejudicial effect, if any, of the improper argument.  
Id.  
Generally, an instruction to disregard impermissible argument cures any prejudicial effect. 
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), 
cert. denied,
 532 U.S. 944 (2001).
  In assessing the curative effect of the court’s instruction to disregard, the correct inquiry is whether, in light of the record as a whole, the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that the instruction to disregard was ineffective.  
Wesbrook,
 29 S.W.3d at 115-16.
  If the instruction cured any prejudicial effect caused by the improper argument, a reviewing court should find that the trial court did not err. 
Faulkner
, 940 S.W.2d at 312.  Only if the reviewing court determines that the instruction was ineffective does the court go on to determine whether, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury’s verdict.  
Tex. R. App. P. 
44.2(b); 
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

In the present case, Harris contends that the prosecutor’s reference to having taken “an oath to see that justice is done” constituted a strike over the  shoulders of his counsel.  As noted above, the record reflects that the trial court sustained his objection and asked the jury to disregard the comment, but denied his request for a mistrial.  The prosecutor’s comment appears to be a proper response to the defense counsel’s suggestion that the State improperly motivated Hayes and Durkin to testify for the State.  However, even assuming that the prosecutor’s comment was improper, any prejudicial effect was cured by the trial court’s instruction to disregard.

Harris also complains that the prosecutor’s comment, “[Defense counsel] has impugned my integrity as a prosecutor,” was an improper attack over the shoulders of his counsel.  The complained-of comment was a response to the defense counsel’s suggestion that Phillips, an investigator for the District Attorney’s office and a witness for the State, intentionally violated the trial court’s orders by discussing the case with Rodriguez.  The record demonstrates  that Phillips was only called to testify as a rebuttal witness, and after overruling Harris’s objection to Phillip’s alleged violation of the Rule, the trial court allowed him to testify.  The record contains no evidence that Phillips acted improperly  by talking with Rodriguez.  Therefore, it was proper for the prosecutor to respond to the defense’s suggestion of impropriety by the State.  
See Sandoval
, 52 S.W.3d at 858.

3.  Proper Plea for Law Enforcement

Finally, Harris complains that the State impermissibly asked the jury to send a message to the community by finding him guilty based on the following  exchange:

[PROSECUTOR]: . . . As jurors in this case, you represent the community.  You tell the Defendant, send a message to the community-- 

[DEFENSE COUNSEL]: I’ll object to that.  I‘ll object to that as calling for the community standards to find this person guilty.  It’s improper argument.

THE COURT:  Overruled.

[PROSECUTOR]:  Your verdict sends a message to the community, and it sends a message to this Defendant about what kind of conduct-- 

[DEFENSE COUNSEL]: I’ll object to that as calling for community expectations to find a person guilty.  It’s improper jury argument.

THE COURT:  Overruled.

The State, however, contends that the aforementioned argument was a proper plea for law enforcement.

A prosecutorial argument is improper 
if it induces the jury to reach a particular verdict based upon the demands, desires, or expectations of the community.  
See Cortez v. State
, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984) (holding improper the argument, “Now, the only punishment that you can assess that would be any satisfaction at all to the people of this county would be life.”); 
Mata v. State
, 952 S.W.2d 30, 33 (Tex. App.—San Antonio 1997, no pet.) (holding improper the argument, “So I ask you, this is a hard decision that you have to make, but I will tell you on behalf of the State of Texas, an aggravated sexual assault such as this, probation is not what this community and what the State would want.”).  However, mere reference to “the community” does not constitute an improper appeal to community expectations.  
Rodriguez v. State
, 90 S.W.3d 340, 365 (Tex. App.—El Paso 2001, pet. ref’d).  An argument constitutes a proper plea for law enforcement if it urges the jury to be the voice of the community, rather than asking the jury to lend its ear to the community.  
Cortez
, 683 S.W.2d at 421.  Thus, a prosecutor’s request that the jury “represent the community” and “send a message” falls within the parameters of proper argument as a plea for law enforcement.  
See Goocher v. State
, 633 S.W.2d 860, 864 (Tex. Crim. App. [Panel Op.]) (holding proper the argument, “I’m asking you to enforce it.  I am asking you to do what needs to be done to send these type of people a message to tell them we’re not tolerating this type of behavior in our county.”), 
cert. dismissed
, 459 U.S. 807 (1982); 
Barcenes v. State
, 940 S.W.2d 739, 749 (Tex. App.—San Antonio 1997, pet. ref’d) (holding proper the argument, “You know, you’re here because you have been chosen by the community to make the decision, and that’s it . . .--don’t send a message to the community that you’re going to believe--“); 
Caballero v. State
, 919 S.W.2d 919, 924 (Tex. App—Houston [14
th
 Dist.] 1996, pet. ref’d) (holding proper the argument, “[J]urors are sick and tired of this.  Jurors are tired of crime because jurors such as yourself are members of the community you represent.  You represent the community.”) 

In the present case, the prosecutor’s argument did not pressure the jury to reach a particular verdict based upon the demands, desires, or expectations of the community.  On the contrary, the prosecutor argued that the jury represented the community and asked the jury to send a message by its verdict. The complained-of argument properly asks the jury to act as the voice of the community, and therefore, it constitutes a proper plea for law enforcement. Accordingly, we hold that the trial court did err by overruling Harris’s objection to the argument.  We overrule Harris’s third point.

VI.  Conclusion

Having overruled Harris’s three points, we affirm the trial court’s judgments. 

SUE WALKER

JUSTICE

PANEL F:
 LIVINGSTON and WALKER, JJ.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

PUBLISH

DELIVERED: November 20, 2003

FOOTNOTES
1:
This question was followed by a line of questioning that focused on the  prospective jurors’ ability to impartially judge the credibility of a witness that delayed in reporting a crime.  The State also asked the panel, “Does anybody feel that, in all honesty, if you were selected on the jury and there’s a delay in reporting a sexual assault, that you’re not going to be able to judge the credibility of that witness, that you’re not going to be able to believe that witness in making a determination of guilt?”

2:
The questioning that followed the initial inquiry further qualified the question by focusing on whether the prospective jurors could find a defendant guilty beyond a reasonable doubt in the absence of scientific or medical evidence, depending on the facts of the case and whether or not the jurors believed the testimony of the witnesses.

3:
With respect to Hayes, the defense argued, “This is someone who--if her probation is revoked, she could go to jail for six months.  And [prosecutor] talked about a motive to testify.  There you go, right there.  Does she really want to make the State angry at her?  Does she really want to make the State angry at her when they can put her in jail for just a technical violation of her probation.” 

Shortly following, with respect to Durkin, the defense argued, “He could go to prison if the State revoked his probation.  Could it possibly be that that might have an interest in how he testifies to you, the fact that these people could put him in prison for ten years?”