COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-125-CR

 

 

HAROLD JOHN THOMAS                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 297TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Harold John Thomas appeals his
convictions and sentences for aggravated sexual assault of a child and
indecency with a child.  We affirm.








A.T.=s mother
died after a long illness when A.T. was five years old.  A.T. continued to live with her mother=s
common-law husband, appellant, until she was removed from his custody and
adopted.  When she was seven, she told
her adoptive parents that appellant had sexually abused her when she was
between the ages of three and five.  An
investigation followed, and the case went to trial.  A jury found appellant guilty of one count of
aggravated sexual assault of a child and two counts of indecency with a child, and
it assessed his punishment at life in prison on all counts with fines of
$10,000 on the indecency counts.  The
trial court sentenced appellant accordingly, ordering the sentences to run
concurrently.  Appellant brings eight
issues for review.

In his first two issues, appellant claims that
the evidence is legally and factually insufficient to support the jury=s
verdicts.  In reviewing legal
sufficiency, we consider all the evidence in the light most favorable to the verdict
and determine whether a rational juror, based on the evidence and reasonable
inferences supported by the evidence, could have found the essential elements
of the crime beyond a reasonable doubt.[2]








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.[3]  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.[4]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[5]








A person commits aggravated sexual assault when
he intentionally or knowingly causes the sexual organ of a child under the age
of fourteen to contact the person=s sexual
organ.[6]  A person commits indecency with a child by
engaging in sexual contact with or causing to engage in sexual contact a child
younger than seventeen who is not the person=s
spouse.[7]  A person makes Asexual
contact@ when,
with the intent to arouse or gratify anyone=s sexual
desire, he touches a child=s
genitals; or touches any part of a child=s body
with his own genitals.[8]

The testimony of a child sexual assault victim,
standing alone, is sufficient to support a conviction for aggravated sexual
assault.[9]  Courts give wide latitude to testimony given
by a child victim of sexual abuse.[10]  The victim=s
description of what happened to her need not be precise, and she is not
expected to express herself at the same level of sophistication as an adult.[11]  There is no requirement that the victim=s
testimony be corroborated by medical or physical evidence.[12]








A.T. was nine years old when she testified at
appellant=s trial.  She told the jury that when she was three and
living at a Fort Worth apartment with her mother and appellant, appellant
unzipped his pants, grabbed her hand, made her touch Ahis
private,@ and
told her that Aboys like it when you touch
their private.@ 
She testified that appellant=s Aprivate@ was Around@ and Apointy@ and
that it pointed up when it touched her. 
Robert Brotherton, her adoptive father, testified that she had described
appellant=s Aprivate@ as
looking like Aa crayon with a pointed end on
it.@

A.T. further testified that, when she was four,
appellant Atold [her] what sex was . . .
and he made [her] do it.@ 
She described how he made her climb on top of him and how he touched her
private with his hand.  She identified
her Aprivate@ as the
area between her legs and stomach where her legs came together.  She said that when appellant touched her
private it hurt Areally bad@ and
that he refused to stop when she told him to.

A.T. also stated that, when she was five,
appellant sexually assaulted her more than ten times.  She recounted that he threatened to hit her
if she did not take off her clothes and that he made her get on top of him
before he Aput his private in [her]
private.@  She testified that Ahe just
did the same thing over and over again.@  More than once in her testimony, she stated
that Ait hurt
really bad.@








Brotherton testified that she told him that
appellant rubbed lotion on her private parts and then Aput his
private into hers.@ 
A.T. testified that, although sometimes appellant would order her to
fetch lotion from the bathroom and then rub it on her Aprivate,@ it
still hurt, and afterwards she would wash herself because the lotion felt Aweird .
. . and disgusting.@

Dr. Jamye Coffman, medical director for the child
abuse program at Cook Children=s
Hospital in Fort Worth, testified that she examined A.T. for evidence of sexual
abuse more than a year after the last alleged incident.  Although Dr. Coffman testified that she found
no physical signs of trauma, she explained that in the time between the last
alleged incident of abuse and the exam, A.T.=s body
would have completely healed.  During the
exam, A.T. told Dr. Coffman that appellant had forced her to participate in
various sexual acts, including rubbing his penis and having intercourse with
him, and that Ait hurt really bad.@  Dr. Coffman explained that A.T.=s having
reported pain was consistent with penetration because the sexual organs of
prepubertal children are very painful to the touch.  Dr. Coffman=s
diagnosis was Asexual abuse with a normal exam.@

Considering the evidence in the light most
favorable to the jury=s verdicts, we hold that a
rational trier of fact could have found beyond a reasonable doubt that
appellant committed the offenses of aggravated sexual assault of a child and
indecency with a child.  Thus, the
evidence is legally sufficient to support the jury=s
verdicts, and we overrule appellant=s first
issue.[13]









In support of his complaint that the evidence is
factually insufficient, appellant points to evidence that A.T. did not outcry
until she was away from appellant and in the process of being adopted by
Brotherton, a Fort Worth police officer. 
He asserts that she was happy about being adopted and that, because
Brotherton had explained the interview process to her and that anatomically
correct dolls would be used, she had been Acoached.@  Appellant further points to the testimony of
his sister, Tresa Thomas.  Tresa
testified she saw A.T. every day from the time A.T. was born until the time
Tresa went to prison for four years.  She
also testified that she saw A.T. every day after she returned from prison when
A.T. was five years old.  During those
times, she never observed A.T. display any fear of appellant. 








To the extent that any of the above is evidence
weighing against the jury=s verdicts, we hold that the
jury=s resolution
of the factual issues in this case is not clearly wrong and manifestly unjust,
nor is the evidence supporting the verdicts so outweighed by conflicting
evidence that the jury=s determination is manifestly
unjust.[14]  Further, after examining the entire record,
we cannot say that the great weight and preponderance of all the evidence,
though legally sufficient, contradicts the jury=s
verdicts.[15]  Accordingly, we hold that the evidence is
factually sufficient to support the verdicts, and we overrule appellant=s second
issue.[16]


In his third issue, appellant contends that the
trial court erred by allowing the State to improperly commit a prospective
juror to convict him based upon the following question: AIf you
believe that victim, that the crime occurred beyond a reasonable doubt, can you
still convict based upon the testimony of that one witness alone?@ 








The trial court has broad discretion over the
process of selecting a jury.[17]  Therefore, appellate courts should not
disturb a trial court=s ruling on the propriety of a
particular question during voir dire absent an abuse of discretion.[18]  A trial court abuses its discretion if it
prohibits a proper question regarding a juror=s views
on an issue applicable to the case.[19]  Additionally, a trial court abuses its
discretion if it allows a question that attempts to commit the juror to a
particular verdict based on a set of circumstances analogous to the case in
question.[20]  However, if the law requires a certain type
of commitment from jurors, an attorney may ask prospective jurors whether they
can follow the law in that regard.[21]








In Standefer, the court of criminal
appeals articulated a three-prong test for determining when a voir dire
question calls for an improper commitment.[22]  The first prong requires trial courts to
determine whether a particular question is a commitment question.[23]  If the court determines that a particular
question is a commitment question, the court must then decide whether the
question gives rise to a valid challenge for cause.[24]  If the question meets the Achallenge
for cause@ requirement, the court must
then determine whether the question includes only those facts necessary
to test whether a prospective juror is challengeable for cause.[25]

In Harris,[26]
we held that the following is not an improper commitment question:  AHow many
people if selected on the jury could not find somebody guilty based upon the
testimony of just one witness, even if you believed that one witness beyond a
reasonable doubt?@ 
We reasoned that this question is proper because it does not bind
prospective jurors to a position based on a particular set of facts, but only
seeks to elicit whether they could abide by the standard of proof set by the
law or if they would hold the State to some higher standard.[27]








Appellant concedes that Harris controls in
his case.  Nonetheless, he claims that Harris
was wrongly decided.  He further claims
that his federal and state due process rights were violated by the
question.  We decline appellant=s
invitation to overrule our previous decision in Harris.  Moreover, because appellant did not raise his
constitutional claims in the trial court, they are not properly before us.[28]  Appellant=s third
issue is overruled.

In his fourth issue, appellant contends that the
trial court erred by denying his motion for a mistrial based upon a question
the prosecutor asked a witness for the State. 
During the State=s examination of Carrie
Paschall, a child forensic interviewer who had interviewed A.T. in 2006, the
prosecutor asked, A[A]t the conclusion of your
interview, did you collect that information and provide it for B B to law
enforcement for the purposes of criminal prosecution?@  Before Paschall replied, the trial court
sustained appellant=s relevancy and unfair prejudice
objections, instructed the jury to disregard the question, and denied appellant=s motion
for a mistrial.








When a trial court sustains an objection and
instructs the jury to disregard but denies a defendant=s motion
for mistrial, the issue is whether the trial court abused its discretion by
denying the mistrial.[29]  Resolution of the issue turns on whether the
trial court=s instruction to disregard cured
any prejudicial effect.[30]  Generally, any error in asking an improper
question is cured and rendered harmless by an instruction to disregard, and a
defendant complaining of an improper question or answer must show obvious harm
that could not be cured by an instruction to disregard.[31]

Assuming without deciding that the question was
improper, appellant has not shown obvious harm that could not be cured by the
trial court=s instruction to disregard the
question.  Nothing in the record suggests
that the jury failed to obey it.[32]  We, therefore, hold that the trial court did
not abuse its discretion by denying appellant=s motion
for mistrial.  Appellant=s fourth
issue is overruled.

In his fifth issue, appellant argues that the
trial court abused its discretion by overruling his relevancy and unfair
prejudice objections to Detective Brent Ezell=s
testimony that he filed charges against appellant.








We will not disturb a trial court=s
evidentiary rulings absent an abuse of discretion.[33]  As long as they are within the zone of
reasonable disagreement and are correct under any theory of law applicable to
the case, they must be upheld.[34]








AAll relevant evidence is
admissible, . . . . Evidence which is not relevant is inadmissible.@[35]  Evidence is relevant if it has any tendency
to make the existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be without the
evidence.[36]  Relevant evidence may be excluded, however,
if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.[37]  Once a defendant makes an unfair-prejudice
objection, the trial court must weigh the probativeness of the evidence to
determine if it is substantially outweighed by its potential for unfair
prejudice.[38]  The proper balancing test includes the
following factors: (1) the inherent probative force of the proffered item of
evidence along with (2) the proponent=s need
for that evidence against (3) any tendency of the evidence to suggest a
decision on an improper basis, (4) any tendency of the evidence to confuse or
distract the jury from the main issues, (5) any tendency of the evidence to be
given undue weight by a jury that has not been equipped to evaluate the
probative force of the evidence, and (6) the likelihood that presentation of
the evidence will consume an inordinate amount of time or merely repeat
evidence already admitted.[39]  The rules of evidence favor the admission of
relevant evidence and carry a presumption that relevant evidence is more
probative than prejudicial.[40]








Appellant contends that the probative value of
the detective=s testimony was Aoutweighed
by its prejudicial effect,@ but he
does not explain why.  The State argues
that the probative value of the testimony is not substantially outweighed by
its prejudicial effect because it was obvious to the jury that charges had to
have been filed before the trial could have taken place.  We agree. 
The trial court could have reasonably concluded that the detective=s
testimony was not overly prejudicial because it merely acknowledged the
obvious.  Moreover, in its charge to the
jury, the trial court instructed that A[t]he
fact that a person has been arrested, confined, or indicted for, or otherwise
charged with the offense, gives rise to no inference of guilt at his trial.@  We presume that the jury followed this
instruction and did not consider the fact that appellant had been charged in
its deliberations.  We, therefore, hold
that the trial court did not abuse its discretion by admitting Detective Ezell=s
testimony.  We overrule appellant=s fifth
issue.

In his sixth issue, appellant complains of the
admission of the State=s outcry evidence from
Brotherton, who testified that A.T. described to him and his wife how appellant
had sexually abused her.  Appellant
concedes that article 38.072 of the code of criminal procedure allows outcry
testimony of minors, but he argues that Brotherton=s
testimony was hearsay to which no exception applied and that it violated his
confrontation rights under Crawford v. Washington.[41]








Appellant=s
confrontation claim under Crawford is not preserved.  Although appellant states in his brief that
he specifically objected that the testimony Aviolated
his right to confront and cross examine the witness,@ the
record shows that he objected on the basis of Ahearsay
and no exception to the hearsay rule.@  By failing to challenge the constitutionality
of article 38.072 in the trial court, appellant has forfeited his claim on
appeal.[42]

With respect to his hearsay complaint, a witness=s
testimony against a defendant is not hearsay and generally admissible when the
witness appears at trial.[43]  Here, A.T. appeared at trial, testified, and
was, in fact, cross examined by appellant. 
Appellant=s sixth issue is overruled.

In his seventh issue, appellant contends that the
trial court abused its discretion by admitting pen packet exhibits at the
punishment phase because the State failed to prove that he is the person
referred to in the exhibits.








To establish that a defendant has been convicted
of a prior offense, the State must prove beyond a reasonable doubt that (1) a
conviction exists and (2) the defendant is linked to the conviction.[44]  No specific document or mode of proof is
required to prove these two elements.[45]  There is no Abest
evidence@ rule in
Texas that requires that the fact of a prior conviction be proven with any
document, much less any specific document.[46]  While evidence of a certified copy of a final
judgment and sentence may be a preferred and convenient means, the State may
prove both of these elements in a number of different ways.[47]  One of the methods that the court of criminal
appeals has recognized is by the Atestimony
of a witness who personally knows the defendant and the fact of his prior
conviction and identifies him.@[48]  Therefore, if the State offers conviction
records in evidence and establishes through the testimony of someone with
personal knowledge that the defendant on trial is the same person who was
previously convicted, the trial court does not err by allowing the jury to
consider the conviction for enhancing the defendant=s
punishment.[49]








In this case, the State presented State=s
Exhibits Nos. 2, 3, and 10.  State=s 2 is a
certified pen packet containing a judgment and seven-year sentence in case no.
0472710D for the offense of sexual assault entered against Harold John Thomas
on February 28, 1994.  The exhibit also
contained mug shots and fingerprints of Harold John Thomas, ID no. 702300.  State=s 3 is a
certified copy of the judgment, the indictment, and a docket sheet from case
no. 0472710D.  State=s 10 is a
certified copy of the bond for the same case. 
The indictment contained in State=s 3
alleged that because of a mental disease and defect, the victim of the sexual
assault did not know what was happening to her or was unable to resist.

The State also presented the testimony of
appellant=s younger brother, Ernest
Thomas.  Ernest testified that he had
known appellant his entire life and was aware of appellant=s legal
problems during the mid-1990>s.  Specifically, Ernest testified as follows:

Q.  I want to turn your attention to around the
1990s, mid-1990s.  Okay.  Were you aware of any sort of legal trouble
your brother may have gotten into as it related to abuse or sexual assault
cases?

 

A.  Just from what he had told me.  He had told me that he was in trouble in the
MHMR home for they said he was B B he had B B 

 

MR.
HENDERSON: I=m going to object to any
hearsay B B they said.

 

THE
COURT: I=ll sustain that last
objection.

 

Q.  (By Mr. Clayton) So your brother told you he
was in trouble for something happening at the MHMR home?

 

A.  Correct.

 

Q.  Did your brother wind up doing any
penitentiary time for that?

 

A.  Seven years.

 

MR.
CLAYTON:  And may I approach this
witness, Your Honor?








THE
COURT:  Very well.

 

MR. CLAYTON:  Let the record reflect I=m showing State=s Exhibit No. 2, a
certified pen packet to counsel for the defense.

 

Q.  (By Mr. Clayton) On State=s Exhibit No. 2, on the
second page of this item, there=s a photograph. 
Whose photograph is that?

 

A.  That=s of John Thomas.

 

Q.  So within B B 

 

A.  My brother.

 

Q.  So within State=s 2 there=s a photograph appearing
of your brother; is that correct?

 

A.  Yes, sir.

 

Q.  Does that show the way he looked back in the
mid->90s?

 

A.  Uh-huh, yes, sir.

 








We hold that this testimony was sufficient to
establish that appellant was the same person previously convicted for sexual
assault in 1994 as set out in the pen packets admitted at appellant=s trial.[50]  Thus, the trial court did not abuse its
discretion by overruling appellant=s
objection and admitting State=s
Exhibits 2, 3, and 10.  We overrule his
seventh issue.

In his final issue, appellant contends that the
trial court erred by overruling his objection to the punishment charge by
submitting an automatic life sentence issue to the jury because a life sentence
is cruel and unusual and disproportionate to the offenses for which he was
convicted.  Appellant concedes that our
decision in Moore v. State[51]
Ais on
point and contrary@ to his position.  Nonetheless, appellant asks us to revisit Moore
and reverse it.  We refuse to do so.








Texas courts have traditionally held that so long
as the punishment is within the range prescribed by the Texas Legislature, the
punishment is not excessive, cruel, or unusual.[52]  Here, appellant received a punishment within
the statutory range.[53]  Further, the offense of aggravated sexual
assault is punishable by imprisonment for life.[54]  Thus, punishment for appellant=s most
recent offense, even if he had not been previously convicted, could have been
assessed at life imprisonment.  We hold,
therefore, that appellant=s punishment assessed at life in
prison is not disproportionate to his crimes of aggravated sexual assault and
indecency with a child committed against a child between the ages of three and
five years, particularly after having previously been found guilty of
committing sexual assault against a victim who Aas a
result of mental disease and defect@ was Aincapable
of either appraising the nature of the act or resisting it.@  Appellant=s eighth
issue is overruled. 

Having overruled all of appellant=s
issues, we affirm the trial court=s
judgment.

 

PER CURIAM

 

PANEL:  CAYCE, C.J.; MCCOY and
MEIER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  July 30, 2009











[1]See Tex. R. App. P. 47.4.





[2]Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).





[3]Neal v. State, 256 S.W.3d 264, 275
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 1037 (2009); Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).





[4]Lancon v. State, 253 S.W.3d 699, 705
(Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15, 417.





[5]Watson, 204 S.W.3d at 417.





[6]Tex. Penal Code Ann. ' 22.021(a)(1)(B)(iii),
(2)(B) (Vernon Supp. 2008).





[7]Id. ' 21.11(a)(1) (Vernon
2003).





[8]Id. ' 21.11(c); see Santos
v. State, 961 S.W.2d 304, 308 (Tex. App.C Houston [1st Dist.] 1997, pet. ref=d).





[9]Tex. Code Crim. Proc.
Ann. art. 38.07 (Vernon 2005); see Garcia v. State, 563 S.W.2d 925, 928
(Tex. Crim. App. 1978).





[10]See Villalon v. State, 791 S.W.2d 130, 134
(Tex. Crim. App. 1990).





[11]See id.





[12]Garcia, 563 S.W.2d at 928; Kemple
v. State, 725 S.W.2d 483, 485 (Tex. App.CCorpus Christi 1987, no pet.).





[13]See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Clayton, 235 S.W.3d at 778.





[14]See Lancon, 253 S.W.3d at 704; Watson,
204 S.W.3d at 414B15, 417.





[15]Watson, 204 S.W.3d at 417.





[16]See Neal, 256 S.W.3d at 275; Watson,
204 S.W.3d at 414.





[17]Barajas v. State, 93 S.W.3d 36, 38 (Tex.
Crim. App. 2002).





[18]Id.; Davis v. State,
894 S.W.2d 471, 474 (Tex. App.CFort Worth 1995, no pet.).





[19]Howard v. State, 941 S.W.2d 102, 108
(Tex. Crim. App. 1996), cert. denied, 535 U.S. 1065 (2002); Harris v.
State, 122 S.W.3d 871, 878B79 (Tex. App.CFort Worth 2003, pet. ref=d).





[20]See Atkins v. State, 951 S.W.2d 787, 789
(Tex. Crim. App. 1997); Harris, 122 S.W.3d at 879. 





[21]Standefer v. State, 59 S.W.3d 177, 181 (Tex.
Crim. App. 2001); Harris, 122 S.W.3d at 879.





[22]Standefer, 59 S.W.3d at 179B84.





[23]Id. at 179. 





[24]Id. at 181B82.





[25]Id.





[26]122 S.W.3d at 878B82.





[27]Id., 122 S.W.3d at 881B82; see Castillo v.
State, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995) (AA venireman who says, for
instance, that he could not convict even if he believed the State=s only eyewitness, and
that testimony convinced him beyond a reasonable doubt of the defendant=s guilt, can be
challenged for cause[.]@).





[28]See Tex. R. App. P.
33.1(a)(1)(A); Curry v. State, 910 S.W.2d 490, 496 (Tex. Crim. App.
1995).





[29]Webb v. State, 232 S.W.3d 109, 112
(Tex. Crim. App. 2007).





[30]Id.





[31]Wesbrook v. State, 29 S.W.3d 103, 115
(Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 (2001); McIntosh
v. State, 855 S.W.2d 753, 770 (Tex. App.BDallas 1993, pet. ref=d) (citing Ransom v.
State, 789 S.W.2d 572, 585 (Tex. Crim. App.1989), cert. denied, 497
U.S. 1010 (1990)).





[32]See Ladd v. State, 3 S.W.3d 547, 567 (Tex.
Crim. App. 1999), cert. denied, 529 U.S. 1070 (2000).





[33]Winegarner v. State, 235 S.W.3d 787, 790
(Tex. Crim. App. 2007).





[34]Id.





[35]Tex. R. Evid. 402.





[36]Tex. R. Evid. 401.





[37]Tex. R. Evid. 403.





[38]Santellan v. State, 939 S.W.2d 155, 169
(Tex. Crim. App.1997).





[39]Gigliobianco v. State, 210 S.W.3d 637, 641B42 & n.8 (Tex. Crim.
App. 2006).





[40]Jones v. State, 944 S.W.2d 642, 652
(Tex. Crim. App.1996), cert. denied, 522 U.S. 832 (1997).





[41]541 U.S. 36, 124 S. Ct.
1354 (2004).





[42]See Karenev v. State, 281 S.W.3d 428, 434
(Tex. Crim. App. 2009); Curry, 910 S.W.2d at 496.





[43]See Tex. R. Evid. 801(d)(A>Hearsay= is a statement, other
than one made by the declarant while testifying at the trial or hearing,
offered in evidence to prove the truth of the matter asserted.@).





[44]Flowers v. State, 220 S.W.3d 919, 921B22 (Tex. Crim. App.
2007).





[45]Id.





[46]Id.





[47]See id. 





[48]See Beck v. State, 719 S.W.2d 205, 209
(Tex. Crim. App. 1986) (citing Ward v. State, 505 S.W.2d 832 (Tex. Crim.
App.), cert. denied, 419 U.S. 864 (1974)).





[49]Id.





[50]See Beck, 719 S.W.2d at 209; Davis
v. State, 268 S.W.3d 683, 717 (Tex. App.CFort Worth 2008, pet. ref=d) (holding that
defendant=s former wife=s testimony that she was
familiar with defendant=s criminal history and
that defendant was the same person who had been convicted of a felony was
sufficient to admit the prior conviction for enhancement purposes).





[51]54 S.W.3d 529 (Tex. App.CFort Worth 2001, pet. ref=d).





[52]See, e.g., Harris v.
State,
656 S.W.2d 481, 486 (Tex. Crim. App. 1983); Alvarez v. State, 63 S.W.3d
578, 580 (Tex. App.CFort Worth 2001, no
pet.); Price v. State, 35 S.W.3d 136, 144 (Tex. App.CWaco 2000, pet. ref=d) (op. on reh=g).





[53]See Tex. Penal Code Ann. ' 12.42(c) (Vernon Supp.
2008) (a defendant convicted of indecency with a child or aggravated sexual
assault receives a mandatory life sentence if he has previously been convicted
of a felony).





[54]See id. ' 12.32(a) (Vernon 2003).