

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-125-CR

---

HAROLD JOHN THOMAS                                    APPELLANT

V.

THE STATE OF TEXAS                                         STATE

------------

### FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Harold John Thomas appeals his convictions and sentences for aggravated sexual assault of a child and indecency with a child. We affirm.

A.T.'s mother died after a long illness when A.T. was five years old. A.T. continued to live with her mother's common-law husband, appellant, until she was removed from his custody and adopted. When she was seven, she told

---

[1] *See* Tex. R. App. P. 47.4.

her adoptive parents that appellant had sexually abused her when she was between the ages of three and five. An investigation followed, and the case went to trial. A jury found appellant guilty of one count of aggravated sexual assault of a child and two counts of indecency with a child, and it assessed his punishment at life in prison on all counts with fines of $10,000 on the indecency counts. The trial court sentenced appellant accordingly, ordering the sentences to run concurrently. Appellant brings eight issues for review.

In his first two issues, appellant claims that the evidence is legally and factually insufficient to support the jury's verdicts. In reviewing legal sufficiency, we consider all the evidence in the light most favorable to the verdict and determine whether a rational juror, based on the evidence and reasonable inferences supported by the evidence, could have found the essential elements of the crime beyond a reasonable doubt.[2]

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.[3] We then ask whether the evidence supporting the conviction, although legally

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[3] *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).

2

sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust.[4] To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.[5]

A person commits aggravated sexual assault when he intentionally or knowingly causes the sexual organ of a child under the age of fourteen to contact the person's sexual organ.[6] A person commits indecency with a child by engaging in sexual contact with or causing to engage in sexual contact a child younger than seventeen who is not the person's spouse.[7] A person makes "sexual contact" when, with the intent to arouse or gratify anyone's

---

[4] *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417.

[5] *Watson*, 204 S.W.3d at 417.

[6] Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii), (2)(B) (Vernon Supp. 2008).

[7] *Id.* § 21.11(a)(1) (Vernon 2003).

3

sexual desire, he touches a child's genitals; or touches any part of a child's body with his own genitals.[8]

The testimony of a child sexual assault victim, standing alone, is sufficient to support a conviction for aggravated sexual assault.[9] Courts give wide latitude to testimony given by a child victim of sexual abuse.[10] The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult.[11] There is no requirement that the victim's testimony be corroborated by medical or physical evidence.[12]

A.T. was nine years old when she testified at appellant's trial. She told the jury that when she was three and living at a Fort Worth apartment with her mother and appellant, appellant unzipped his pants, grabbed her hand, made her touch "his private," and told her that "boys like it when you touch their

---

[8] *Id.* § 21.11(c); *see Santos v. State*, 961 S.W.2d 304, 308 (Tex. App.— Houston [1st Dist.] 1997, pet. ref'd).

[9] Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); *see Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978).

[10] *See Villalon v. State,* 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).

[11] *See id.*

[12] *Garcia,* 563 S.W.2d at 928; *Kemple v. State,* 725 S.W.2d 483, 485 (Tex. App.—Corpus Christi 1987, no pet.).

4

private." She testified that appellant's "private" was "round" and "pointy" and that it pointed up when it touched her. Robert Brotherton, her adoptive father, testified that she had described appellant's "private" as looking like "a crayon with a pointed end on it."

A.T. further testified that, when she was four, appellant "told [her] what sex was . . . and he made [her] do it." She described how he made her climb on top of him and how he touched her private with his hand. She identified her "private" as the area between her legs and stomach where her legs came together. She said that when appellant touched her private it hurt "really bad" and that he refused to stop when she told him to.

A.T. also stated that, when she was five, appellant sexually assaulted her more than ten times. She recounted that he threatened to hit her if she did not take off her clothes and that he made her get on top of him before he "put his private in [her] private." She testified that "he just did the same thing over and over again." More than once in her testimony, she stated that "it hurt really bad."

Brotherton testified that she told him that appellant rubbed lotion on her private parts and then "put his private into hers." A.T. testified that, although sometimes appellant would order her to fetch lotion from the bathroom and

5

then rub it on her "private," it still hurt, and afterwards she would wash herself because the lotion felt "weird . . . and disgusting."

Dr. Jamye Coffman, medical director for the child abuse program at Cook Children's Hospital in Fort Worth, testified that she examined A.T. for evidence of sexual abuse more than a year after the last alleged incident. Although Dr. Coffman testified that she found no physical signs of trauma, she explained that in the time between the last alleged incident of abuse and the exam, A.T.'s body would have completely healed. During the exam, A.T. told Dr. Coffman that appellant had forced her to participate in various sexual acts, including rubbing his penis and having intercourse with him, and that "it hurt really bad." Dr. Coffman explained that A.T.'s having reported pain was consistent with penetration because the sexual organs of prepubertal children are very painful to the touch. Dr. Coffman's diagnosis was "sexual abuse with a normal exam."

Considering the evidence in the light most favorable to the jury's verdicts, we hold that a rational trier of fact could have found beyond a reasonable doubt that appellant committed the offenses of aggravated sexual assault of a child and indecency with a child. Thus, the evidence is legally sufficient to support the jury's verdicts, and we overrule appellant's first issue.[13]

---

[13] *See Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton,* 235 S.W.3d at 778.

6

In support of his complaint that the evidence is factually insufficient, appellant points to evidence that A.T. did not outcry until she was away from appellant and in the process of being adopted by Brotherton, a Fort Worth police officer. He asserts that she was happy about being adopted and that, because Brotherton had explained the interview process to her and that anatomically correct dolls would be used, she had been "coached." Appellant further points to the testimony of his sister, Tresa Thomas. Tresa testified she saw A.T. every day from the time A.T. was born until the time Tresa went to prison for four years. She also testified that she saw A.T. every day after she returned from prison when A.T. was five years old. During those times, she never observed A.T. display any fear of appellant.

To the extent that any of the above is evidence weighing against the jury's verdicts, we hold that the jury's resolution of the factual issues in this case is not clearly wrong and manifestly unjust, nor is the evidence supporting the verdicts so outweighed by conflicting evidence that the jury's determination is manifestly unjust.[14] Further, after examining the entire record, we cannot say that the great weight and preponderance of all the evidence, though legally

--------

[14] *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417.

7

sufficient, contradicts the jury's verdicts.[15] Accordingly, we hold that the evidence is factually sufficient to support the verdicts, and we overrule appellant's second issue.[16]

In his third issue, appellant contends that the trial court erred by allowing the State to improperly commit a prospective juror to convict him based upon the following question: "If you believe that victim, that the crime occurred beyond a reasonable doubt, can you still convict based upon the testimony of that one witness alone?"

The trial court has broad discretion over the process of selecting a jury.[17] Therefore, appellate courts should not disturb a trial court's ruling on the propriety of a particular question during voir dire absent an abuse of discretion.[18] A trial court abuses its discretion if it prohibits a proper question regarding a juror's views on an issue applicable to the case.[19] Additionally, a

---

[15] *Watson*, 204 S.W.3d at 417.

[16] *See Neal,* 256 S.W.3d at 275; *Watson,* 204 S.W.3d at 414.

[17] *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).

[18] *Id*.; *Davis v. State,* 894 S.W.2d 471, 474 (Tex. App.—Fort Worth 1995, no pet.).

[19] *Howard v. State,* 941 S.W.2d 102, 108 (Tex. Crim. App. 1996), *cert. denied*, 535 U.S. 1065 (2002); *Harris v. State*, 122 S.W.3d 871, 878–79 (Tex. App.—Fort Worth 2003, pet. ref'd).

trial court abuses its discretion if it allows a question that attempts to commit the juror to a particular verdict based on a set of circumstances analogous to the case in question.[20] However, if the law requires a certain type of commitment from jurors, an attorney may ask prospective jurors whether they can follow the law in that regard.[21]

In *Standefer,* the court of criminal appeals articulated a three-prong test for determining when a voir dire question calls for an improper commitment.[22] The first prong requires trial courts to determine whether a particular question is a commitment question.[23] If the court determines that a particular question is a commitment question, the court must then decide whether the question gives rise to a valid challenge for cause.[24] If the question meets the "challenge for cause" requirement, the court must then determine whether the question

---

[20] *See Atkins v. State,* 951 S.W.2d 787, 789 (Tex. Crim. App. 1997); *Harris*, 122 S.W.3d at 879.

[21] *Standefer v. State,* 59 S.W.3d 177, 181 (Tex. Crim. App. 2001)*; Harris*, 122 S.W.3d at 879.

[22] *Standefer*, 59 S.W.3d at 179–84.

[23] *Id.* at 179.

[24] *Id.* at 181–82.

includes *only* those facts necessary to test whether a prospective juror is challengeable for cause.[25]

In *Harris*,[26] we held that the following is not an improper commitment question: "How many people if selected on the jury could not find somebody guilty based upon the testimony of just one witness, even if you believed that one witness beyond a reasonable doubt?" We reasoned that this question is proper because it does not bind prospective jurors to a position based on a particular set of facts, but only seeks to elicit whether they could abide by the standard of proof set by the law or if they would hold the State to some higher standard.[27]

Appellant concedes that *Harris* controls in his case. Nonetheless, he claims that *Harris* was wrongly decided. He further claims that his federal and state due process rights were violated by the question. We decline appellant's invitation to overrule our previous decision in *Harris*. Moreover, because

---

[25] *Id.*

[26] 122 S.W.3d at 878–82.

[27] *Id.*, 122 S.W.3d at 881–82; *see Castillo v. State*, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995) ("A venireman who says, for instance, that he could not convict even if he believed the State's only eyewitness, and that testimony convinced him beyond a reasonable doubt of the defendant's guilt, can be challenged for cause[.]").

appellant did not raise his constitutional claims in the trial court, they are not properly before us.[28] Appellant's third issue is overruled.

In his fourth issue, appellant contends that the trial court erred by denying his motion for a mistrial based upon a question the prosecutor asked a witness for the State. During the State's examination of Carrie Paschall, a child forensic interviewer who had interviewed A.T. in 2006, the prosecutor asked, "[A]t the conclusion of your interview, did you collect that information and provide it for – – to law enforcement for the purposes of criminal prosecution?" Before Paschall replied, the trial court sustained appellant's relevancy and unfair prejudice objections, instructed the jury to disregard the question, and denied appellant's motion for a mistrial.

When a trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for mistrial, the issue is whether the trial court abused its discretion by denying the mistrial.[29] Resolution of the issue turns on whether the trial court's instruction to disregard cured any prejudicial effect.[30] Generally, any error in asking an improper question is cured and rendered

---

[28] *See* Tex. R. App. P. 33.1(a)(1)(A); *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995).

[29] *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

[30] *Id.*

harmless by an instruction to disregard, and a defendant complaining of an improper question or answer must show obvious harm that could not be cured by an instruction to disregard.[31]

Assuming without deciding that the question was improper, appellant has not shown obvious harm that could not be cured by the trial court's instruction to disregard the question. Nothing in the record suggests that the jury failed to obey it.[32] We, therefore, hold that the trial court did not abuse its discretion by denying appellant's motion for mistrial. Appellant's fourth issue is overruled.

In his fifth issue, appellant argues that the trial court abused its discretion by overruling his relevancy and unfair prejudice objections to Detective Brent Ezell's testimony that he filed charges against appellant.

We will not disturb a trial court's evidentiary rulings absent an abuse of discretion.[33] As long as they are within the zone of reasonable disagreement

---

[31] *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001); *McIntosh v. State,* 855 S.W.2d 753, 770 (Tex. App.–Dallas 1993, pet. ref'd) (citing *Ransom v. State,* 789 S.W.2d 572, 585 (Tex. Crim. App.1989), *cert. denied*, 497 U.S. 1010 (1990)).

[32] *See Ladd v. State,* 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000).

[33] *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

and are correct under any theory of law applicable to the case, they must be upheld.[34]

"All relevant evidence is admissible, . . . . Evidence which is not relevant is inadmissible."[35]   Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[36] Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.[37]   Once a defendant makes an unfair-prejudice objection, the trial court must weigh the probativeness of the evidence to determine if it is substantially outweighed by its potential for unfair prejudice.[38]   The proper balancing test includes the following factors: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to

---

[34] *Id.*

[35] Tex. R. Evid. 402.

[36] Tex. R. Evid. 401.

[37] Tex. R. Evid. 403.

[38] *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App.1997).

13

suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.[39]  The rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial.[40]

Appellant contends that the probative value of the detective's testimony was "outweighed by its prejudicial effect," but he does not explain why.  The State argues that the probative value of the testimony is not substantially outweighed by its prejudicial effect because it was obvious to the jury that charges had to have been filed before the trial could have taken place.  We agree.  The trial court could have reasonably concluded that the detective's testimony was not overly prejudicial because it merely acknowledged the obvious.  Moreover, in its charge to the jury, the trial court instructed that "[t]he fact that a person has been arrested, confined, or indicted for, or

---

[39] *Gigliobianco v. State,* 210 S.W.3d 637, 641–42 & n.8 (Tex. Crim. App. 2006).

[40] *Jones v. State,* 944 S.W.2d 642, 652 (Tex. Crim. App.1996), *cert. denied,* 522 U.S. 832 (1997).

otherwise charged with the offense, gives rise to no inference of guilt at his trial." We presume that the jury followed this instruction and did not consider the fact that appellant had been charged in its deliberations. We, therefore, hold that the trial court did not abuse its discretion by admitting Detective Ezell's testimony. We overrule appellant's fifth issue.

In his sixth issue, appellant complains of the admission of the State's outcry evidence from Brotherton, who testified that A.T. described to him and his wife how appellant had sexually abused her. Appellant concedes that article 38.072 of the code of criminal procedure allows outcry testimony of minors, but he argues that Brotherton's testimony was hearsay to which no exception applied and that it violated his confrontation rights under *Crawford v. Washington*.[41]

Appellant's confrontation claim under *Crawford* is not preserved. Although appellant states in his brief that he specifically objected that the testimony "violated his right to confront and cross examine the witness," the record shows that he objected on the basis of "hearsay and no exception to the

---

[41] 541 U.S. 36, 124 S. Ct. 1354 (2004).

hearsay rule." By failing to challenge the constitutionality of article 38.072 in the trial court, appellant has forfeited his claim on appeal.[42]

With respect to his hearsay complaint, a witness's testimony against a defendant is not hearsay and generally admissible when the witness appears at trial.[43] Here, A.T. appeared at trial, testified, and was, in fact, cross examined by appellant. Appellant's sixth issue is overruled.

In his seventh issue, appellant contends that the trial court abused its discretion by admitting pen packet exhibits at the punishment phase because the State failed to prove that he is the person referred to in the exhibits.

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a conviction exists and (2) the defendant is linked to the conviction.[44] No specific document or mode of proof is required to prove these two elements.[45] There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any

---

[42] *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *Curry,* 910 S.W.2d at 496.

[43] *See* Tex. R. Evid. 801(d)("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

[44] *Flowers v. State*, 220 S.W.3d 919, 921–22 (Tex. Crim. App. 2007).

[45] *Id.*

document, much less any specific document.[46]  While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways.[47]  One of the methods that the court of criminal appeals has recognized is by the "testimony of a witness who personally knows the defendant and the fact of his prior conviction and identifies him."[48]  Therefore, if the State offers conviction records in evidence and establishes through the testimony of someone with personal knowledge that the defendant on trial is the same person who was previously convicted, the trial court does not err by allowing the jury to consider the conviction for enhancing the defendant's punishment.[49]

In this case, the State presented State's Exhibits Nos. 2, 3, and 10. State's 2 is a certified pen packet containing a judgment and seven-year sentence in case no. 0472710D for the offense of sexual assault entered against Harold John Thomas on February 28, 1994.  The exhibit also contained mug shots and fingerprints of Harold John Thomas, ID no. 702300.  State's 3

---

[46] *Id.*

[47] *See id.*

[48] *See Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986) (citing *Ward v. State*, 505 S.W.2d 832 (Tex. Crim. App.), *cert. denied*, 419 U.S. 864 (1974)).

[49] *Id.*

17

is a certified copy of the judgment, the indictment, and a docket sheet from case no. 0472710D.  State's 10 is a certified copy of the bond for the same case.  The indictment contained in State's 3 alleged that because of a mental disease and defect, the victim of the sexual assault did not know what was happening to her or was unable to resist.

The State also presented the testimony of appellant's younger brother, Ernest Thomas.  Ernest testified that he had known appellant his entire life and was aware of appellant's legal problems during the mid-1990's.  Specifically, Ernest testified as follows:

> Q.  I want to turn your attention to around the 1990s, mid-1990s. Okay.  Were you aware of any sort of legal trouble your brother may have gotten into as it related to abuse or sexual assault cases?
>
> A.  Just from what he had told me.  He had told me that he was in trouble in the MHMR home for they said he was – – he had – –
>
> MR. HENDERSON: I'm going to object to any hearsay – – they said.
>
> THE COURT: I'll sustain that last objection.
>
> Q.  (By Mr. Clayton) So your brother told you he was in trouble for something happening at the MHMR home?
>
> A.  Correct.
>
> Q.  Did your brother wind up doing any penitentiary time for that?
>
> A.  Seven years.
>
> MR. CLAYTON:  And may I approach this witness, Your Honor?

18

THE COURT:  Very well.

MR. CLAYTON:  Let the record reflect I'm showing State's Exhibit No. 2, a certified pen packet to counsel for the defense.

Q.  (By Mr. Clayton) On State's Exhibit No. 2, on the second page of this item, there's a photograph.  Whose photograph is that?

A.  That's of John Thomas.

Q.  So within – –

A.  My brother.

Q.  So within State's 2 there's a photograph appearing of your brother; is that correct?

A.  Yes, sir.

Q.  Does that show the way he looked back in the mid-'90s?

A.  Uh-huh, yes, sir.

We hold that this testimony was sufficient to establish that appellant was the same person previously convicted for sexual assault in 1994 as set out in the pen packets admitted at appellant's trial.[50]  Thus, the trial court did not

---

[50] *See Beck*, 719 S.W.2d at 209; *Davis v. State*, 268 S.W.3d 683, 717 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding that defendant's former wife's testimony that she was familiar with defendant's criminal history and that defendant was the same person who had been convicted of a felony was sufficient to admit the prior conviction for enhancement purposes).

19

abuse its discretion by overruling appellant's objection and admitting State's Exhibits 2, 3, and 10. We overrule his seventh issue.

In his final issue, appellant contends that the trial court erred by overruling his objection to the punishment charge by submitting an automatic life sentence issue to the jury because a life sentence is cruel and unusual and disproportionate to the offenses for which he was convicted. Appellant concedes that our decision in *Moore v. State*[51] "is on point and contrary" to his position. Nonetheless, appellant asks us to revisit *Moore* and reverse it. We refuse to do so.

Texas courts have traditionally held that so long as the punishment is within the range prescribed by the Texas Legislature, the punishment is not excessive, cruel, or unusual.[52] Here, appellant received a punishment within the statutory range.[53] Further, the offense of aggravated sexual assault is

---

[51] 54 S.W.3d 529 (Tex. App.—Fort Worth 2001, pet. ref'd).

[52] *See, e.g., Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Alvarez v. State,* 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.); *Price v. State*, 35 S.W.3d 136, 144 (Tex. App.—Waco 2000, pet. ref'd) (op. on reh'g).

[53] *See* Tex. Penal Code Ann. § 12.42(c) (Vernon Supp. 2008) (a defendant convicted of indecency with a child or aggravated sexual assault receives a mandatory life sentence if he has previously been convicted of a felony).

punishable by imprisonment for life.[54]  Thus, punishment for appellant's most recent offense, even if he had not been previously convicted, could have been assessed at life imprisonment.  We hold, therefore, that appellant's punishment assessed at life in prison is not disproportionate to his crimes of aggravated sexual assault and indecency with a child committed against a child between the ages of three and five years, particularly after having previously been found guilty of committing sexual assault against a victim who "as a result of mental disease and defect" was "incapable of either appraising the nature of the act or resisting it."  Appellant's eighth issue is overruled.

Having overruled all of appellant's issues, we affirm the trial court's judgment.

PER CURIAM


PANEL:  CAYCE, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 30, 2009

---

[54] *See id*. § 12.32(a) (Vernon 2003).

21