

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00674-CR

Carlos **OLIVA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Guadalupe County, Texas
Trial Court No. CCL-10-1438
Honorable Frank Follis, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  April 2, 2014

AFFIRMED

A jury convicted appellant Carlos Oliva of driving while intoxicated ("DWI").  The trial court sentenced Oliva to 180 days confinement in the Guadalupe County Jail and assessed a $2,000.00 fine.  Confinement and half of the fine were probated for eighteen months.  On appeal, Oliva raises three issues contending the trial court erred by: (1) excluding Oliva's field sobriety test expert; (2) excluding Oliva's medical records; and (3) overruling Oliva's objections to the State's alleged improper jury argument.  We affirm the trial court's judgment.

## BACKGROUND

Trooper Rudolph L. Williams of the Texas Department of Public Safety stopped a vehicle driven by Oliva at shortly after 1:00 a.m. for speeding ten miles per hour over the speed limit. While talking to Oliva and requesting his driver's license and insurance, Trooper Williams noticed an odor of alcohol emanating from Oliva. Oliva was asked if he had any alcoholic beverages to drink that evening and answered he had not. Trooper Williams then decided to have Oliva perform the three standardized field sobriety tests.

Trooper Williams administered the Horizontal Gaze and Nystagmus Test ("HGN" test), the Walk and Turn Test, and the One-Leg Stand Test on Oliva at the scene. At no time during the testing did Oliva inform Trooper Williams that he had suffered injuries to his lower back and legs. Oliva's results on each field sobriety test indicated to the trooper that Oliva was intoxicated. Trooper Williams arrested Oliva based on the standardized field sobriety test results.

Oliva's actual blood alcohol content on the night of his arrest was never determined because he refused to submit to a Breathalyzer examination. Trooper Williams did not attempt to obtain a warrant for a blood draw.

At trial, Trooper Williams testified to the events described above and also demonstrated to the jury how two of the three standardized field sobriety tests are administered – the Walk and Turn Test and the One-Leg Stand Test. The jury was subsequently shown video from the trooper's dash camera, which showed Oliva performing the field sobriety tests on the night of his arrest.

On cross-examination, Trooper Williams admitted he did not ask Oliva if he had any preexisting physical injuries before administering the Walk and Turn and One-Leg Stand Tests. Counsel for Oliva then asked Trooper Williams to administer the tests to Oliva in the presence of the jury. Oliva's performance of the field sobriety tests in front of the jury produced several positive clues for intoxication even though he testified he had not consumed any alcohol that day.

The next witness to testify was Oliva's wife, Jacqueline Oliva. Ms. Oliva admitted, contrary to her husband's claim to the trooper, she and her husband had been drinking on the night of Oliva's arrest. She claimed, however, they consumed only two glasses of wine each. She also testified about her husband's military service with the Guatemalan military in the 1980s, and the injuries he sustained during his service. According to Ms. Oliva, Oliva suffers from ankle and knee injuries sustained as a result of helicopter jumps. She also testified Oliva suffered a gunshot wound to his upper thigh. According to Ms. Oliva, these injuries affect Oliva's mobility and ability to walk a straight line.

After his wife testified about his injuries and disabilities, Oliva attempted to call Jerry Potter, a former United States Navy military police officer, as an expert witness. In response, the State requested a *Daubert* hearing, contending Mr. Potter was not a proper expert witness. During the *Daubert* hearing, Mr. Potter testified he had served seventeen years as a military police officer, was a field sobriety test instructor in the Navy, and had made in excess of 200 arrests during his service. Oliva's sole purpose in calling Mr. Potter as a proposed expert was to allow Mr. Potter to opine that based on his experience, an officer performing field sobriety tests must ask the suspect if he has any injuries that may affect his ability to perform the tests. After cross-examining Mr. Potter, the State moved to exclude him as an expert witness.

The trial court declined to allow Mr. Potter to testify as an expert witness, stating: (1) "I do not find that the question of whether an officer should ask someone about prior injuries before administering field sobriety tests is a scientific or technical question;" (2) "Mr. Potter has demonstrated no specialized training or qualifications in that field for that particular question;" and (3) "it's basically a matter of common sense . . . whether you would expect an officer to ask someone if they were injured."

After failing in his attempt to have Mr. Potter testify as an expert witness, Oliva called a custodian of records to authenticate certain medical records. Oliva wanted to have the trial court admit into evidence medical records regarding the diagnosis and treatment of his injuries.

The State objected to the introduction of Oliva's medical records on the ground that they are irrelevant without a physician's testimony. According to the State, a doctor was necessary to explain the technical language in the records that allegedly diagnosed Oliva's injuries. The trial court sustained the State's objection, noting the medical records would be cumulative of evidence already before the jury. Thereafter, Oliva took the stand to testify to the events leading up to his arrest and his history of physical injury.

Oliva admitted consuming two or three drinks on the night of his arrest — despite telling Trooper Williams otherwise. He told the jury his version of the events at the traffic stop, and the origin of his injuries that allegedly affected his ability to pass some of the standardized field sobriety tests. According to Oliva, he served in the Guatemalan Special Forces during the early 1980s. During his service, Oliva jumped from helicopters an estimated "36-40" times, which caused ankle and knee damage. He also stated he suffered gunshot wounds to his upper leg and his buttocks. As a result of these injuries, Oliva stated he had sciatic nerve damage and mobility issues.

After Oliva testified, both sides delivered closing arguments. After deliberations, the jury found Oliva guilty of DWI, and the trial court sentenced Oliva to 180 days confinement in the Guadalupe County Jail and a $2,000 fine. As noted above, the jail time and half the fine were probated. Oliva subsequently perfected this appeal.

## ANALYSIS

As noted above, Oliva raises three issues on appeal. Specifically, Oliva contends the trial court erred by: (1) excluding Mr. Potter's testimony; (2) excluding his medical records; and (3) overruling his objections to the State's allegedly improper jury argument.

### *Expert Witness*

Oliva first contends the trial court erred by failing to qualify Jerry Potter as an expert witness under rule 702 of the Texas Rules of Evidence. To admit expert testimony under Rule 702, the trial court must be satisfied that three elements are met: (1) the witness qualifies as an expert by way of his knowledge, skill, experience, training, or education; (2) the subject-matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). "These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Id.* We review the trial court's decision to exclude expert testimony under these elements for abuse of discretion. *See Robinson v. State*, 368 S.W.3d 588, 600 (Tex. App.— Austin 2012, pet. ref'd) (citing *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002)). Accordingly, we will uphold the trial court's ruling on the expert witness's admissibly so long as it falls within the zone of reasonable disagreement. *Robinson*, 368 S.W.3d at 600 (quoting *Sexton*, 93 S.W.3d at 99).

Here, as mentioned above, the trial court excluded Mr. Potter's testimony under the first two *Davis* prongs because the court: (1) did not find the proposed testimony to reflect a scientific or technical question; (2) did not find Mr. Potter qualified to be an expert by way of education or training; and (3) found Mr. Potter's opinion was a matter of common sense. Although we consider the trial court's reasons for the exclusion of evidence, if the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial judge gave the wrong

reason for a proper ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). Based on our review of the record, we hold Mr. Potter's testimony was irrelevant and would not have assisted the jury in deciding the case. *See Davis*, 329 S.W.3d at 813.

There is no law – constitutional or otherwise – requiring that an officer ask a driver whether he has any injuries before administering the Walk and Turn or the One-Leg Stand field sobriety tests. Therefore, it is irrelevant and would not assist the jury in deciding Oliva's guilt to know whether a former military police officer thinks it is a good idea to ask such a question. If anything, such testimony could serve to confuse the jury, implying the existence of a duty where none exists. Accordingly, we hold the trial court did not abuse its discretion by excluding Mr. Potter's proposed testimony. *See Robinson*, 368 S.W.3d at 600.

Further, even if we were to hold the trial court abused its discretion by excluding Mr. Potter's testimony, we hold the error would not entitle Oliva to a reversal. *See* TEX. R. APP. P. 44.2. The exclusion of expert testimony is non-constitutional error that is reversible only when it affects an appellant's substantial rights to a fair trial. *See Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *see* TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Coble*, 330 S.W.3d at 280. In determining the effect of the exclusion of evidence, we review the entire record and calculate the probable impact of the error upon the rest of the evidence. *Id.*

Here, the crux of Oliva's defense was that he failed two out of the three field sobriety tests because of his physical injuries, not because he was intoxicated. In support of this defense, Oliva and his wife testified about the extent of his injuries, and Oliva was permitted to demonstrate to the jury his inability to satisfactorily complete the Walk and Turn and One-Leg Stand tests even when sober. After reviewing the entire record, we hold the potentially erroneous exclusion of Mr. Potter's testimony did very little to influence jury's verdict. *See Coble*, 330 S.W.3d at 280. Oliva

was able to present his defense through his testimony, his wife's testimony, and an in-court demonstration. Moreover, the jury learned Oliva lied to the trooper on the night of the arrest — Oliva had been drinking — and he failed the HGN test. Based on the foregoing, we cannot say the exclusion of Mr. Potter's testimony had substantial and injurious effect or influence in determining the jury's verdict. On the contrary, allowing the testimony would have suggested to the jury the existence of a legal duty that is not recognized in Texas, i.e., asking a DWI suspect if he has physical injuries before administering the field sobriety tests. Accordingly, we overrule Oliva's first issue on appeal.

### *Medical Records*

Oliva next challenges the trial court's decision to exclude his medical records from evidence. We review a trial court's decision to exclude evidence for an abuse of discretion. *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999). Here, Oliva contends the trial court abused its discretion because the medical records were not needlessly cumulative, and were admissible under the business record exception to the hearsay rule.[1]

Having reviewed the record before us, we hold that even if the trial court's decision to exclude the medical records was erroneous, it was not harmful and would not entitle Oliva to a reversal. The erroneous exclusion of evidence is a non-constitutional error to be reviewed for whether the substantial rights of a party were affected. *See Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002); TEX. R. APP. P. 44.2(b). As mentioned above, a substantial right of a

---

[1] Oliva also contends the records were admissible as impeachment evidence because Trooper Williams testified Oliva did not look injured on the night of the arrest. However, Oliva has failed to properly preserve this argument for appeal. A party must make a timely, specific objection and obtain a ruling on the objection to preserve error for review. *See* TEX. R. APP. P. 33.1. Moreover, a point of error or issue on appeal must correspond to the objection made at trial. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Stated alternatively, "[a]n objection stating one legal theory may not be used to support a different legal theory on appeal." *Johnson v. State*, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991). Here, Oliva never suggested he wished to use the medical records to impeach Trooper Williams. Accordingly, we hold this argument was not properly preserved for our review. *See Broxton*, 909 S.W.2d at 918.

party is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble*, 330 S.W.3d at 280.

We hold the probable impact of excluding the medical records is minimal. The records, although admittedly from a disinterested third party, would only serve to confirm what was already made abundantly clear by the defense – Oliva suffered injuries in the past that prevented his successful completion of portions of the field sobriety test, even when sober. Having heard the testimony of Oliva and his wife, and observing a sober Oliva fail the Walk and Turn and One-Leg Stand tests, it is highly unlikely the exclusion of the medical records had a substantial and injurious impact influencing the jury's verdict of guilty of DWI. Accordingly, we hold Oliva was not harmed by the trial court's decision to exclude the medical records. We overrule Oliva's second issue.

### *Closing Argument*

In his third and final appellate issue, Oliva contends the trial court erred in overruling his objections to certain portions of the State's closing argument, thereby allowing the State to make allegedly impermissible jury arguments. Oliva directs this court to numerous instances of allegedly improper jury argument by the State.

We review a trial court's ruling on an objection to an allegedly improper jury argument for an abuse of discretion. *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd). A jury argument is proper if it falls within any one of the following four categories: (1) summation of the evidence presented at trial; (2) reasonable deduction drawn from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Lemon*, 298 S.W.3d at 707. Accordingly, we review the allegedly improper jury arguments to determine whether they fall within one of the four recognized categories. *See Brown*, 270 S.W.3d at 570.

*Proper Administration of Field Sobriety Tests*

During a discussion of the field sobriety tests administered to Oliva, the State made the following argument to the jury:

> You saw it properly administered. If it wasn't properly administered they would have objected to it.

Oliva argues the State's jury argument was an improper misstatement of fact because the proper administration of the field sobriety tests "was vigorously contested throughout the entire proceeding." We disagree.

At no point during the trial did Oliva claim that the trooper failed to properly *administer* the field sobriety tests. Rather, what Oliva "vigorously contested" was the trooper's failure to ask him, prior to the administration of the tests, whether he had any injury or condition that would impede his ability to perform. Therefore, we hold the State's argument was a proper summation of the evidence at trial because Oliva never objected based on an alleged improper administration of the field sobriety tests. *See Brown*, 270 S.W.3d at 570. Accordingly, we overrule this portion of Oliva's second issue.

*The "Golden Rule"*

During a discussion of Oliva's injuries and his performance during the field sobriety tests, the State made the following statement:

> Any one of ya'll if you were – if you were injured to that – that severity, to that degree, you would tell the trooper, I'm injured, that I can't do it.

Without any citation to authority, Oliva contends the State's jury argument was a prohibited "Golden Rule" question. We disagree.

A "Golden Rule" question or argument is one that improperly asks members of the jury to place themselves in the shoes of *the victim*. *Chandler v. State*, 689 S.W.2d 332, 334–35 (Tex. App.—Fort Worth 1985, pet. ref'd) (emphasis added). Such an argument is impermissible because

it "does not fit into any of the four categories; it is rather a plea for the abandonment of objectivity." *See Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985); *but see Torres v. State*, 92 S.W.3d 911, 923–24 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding prosecutor who asked jury to feel fear experienced by victim shortly before his death, given record, made a reasonable deduction from evidence and proper plea for law enforcement.).

We hold the State did not violate the "Golden Rule" prohibition because rather than asking the jurors to put themselves in the victim's shoes, the State asked the jurors to put themselves in Oliva's shoes, i.e., the alleged perpetrator's shoes. Moreover, we hold the State's argument was proper because it called upon the jury to make an objectively reasonable deduction from the evidence — that an individual with injuries as severe as those claimed by Oliva would certainly inform an officer before attempting to perform tests that require a certain amount of mobility. Accordingly, we overrule this portion of Oliva's complaint about the State's closing argument. *See Brown*, 270 S.W.3d at 570.

*Excluded Evidence*

During the State's closing argument, it made the following statement about the evidence:

You have to present evidence. You've never seen any medical records. You've never seen any doctors. You've never seen any expert witnesses – into the courtroom.

Oliva argues this is an improper jury argument because it is a "manifestly unjust reference to the lack of an expert witness and medical records" that were excluded but the State knew existed. Although the argument technically sums up the evidence available to the jury, or lack thereof, we agree the State's argument is improper. It not only disingenuously suggested to the jury Oliva did not attempt to present the type of evidence referred to in the State's argument, but improperly invited the jury to speculate about evidence outside of the record. *See Bautista v. State*, 363 S.W.3d 259, 265 (Tex. App.—San Antonio 2012, no pet.) ("It is improper to invite the jury to speculate

about the existence of evidence that was not admitted."). This court in no way condones the State's argument. However, we address the State's contention that Oliva did not properly preserve this error for our review.

At trial, Oliva made the following objection to the State's argument referring to the absence of medical records and expert testimony:

> Judge, objection. I'm sorry. I must preserve the record. I ask the Court, in light of it saying no medical records, to please reconsider it's [sic] earlier ruling excluding my evidence. I believe he's opened the door at this point to the medical records by saying there are no medical records and it changes the relevancy of the medical records. At this point I ask the Court to reconsider it's [sic] ruling based on the argument.

Although he made an "objection" after the State's argument, the relief sought by Oliva was not for an instruction to disregard, but rather, Oliva asked the judge to reconsider the prior exclusion of evidence mentioned in the State's argument. A point of error or issue on appeal must correspond to the objection made at trial. *Broxton*, 909 S.W.2d at 918. The State contends Oliva's objection does not correspond to the issue of improper argument on appeal and therefore, was not preserved for our review.

We need not determine whether Oliva's objection was sufficient because even if Oliva's issue was properly preserved for our review, we hold the State's argument was not sufficiently harmful to entitle Oliva to a reversal. We determine the harm caused by improper jury argument by considering: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measure adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *See Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007).

Although the State's argument was improper and the trial court did not make any curative measures, the certainty of Oliva's conviction absent the State's misconduct is strong. As mentioned above, Oliva admitted he was drinking on the night of his arrest, thereby exposing he lied to Trooper Williams at the scene, produced all six clues on the HGN field sobriety test, smelled of alcohol on his breath, and was driving ten miles per hour over the speed limit. Therefore, we hold the evidence supporting Oliva's conviction is such that the State's improper argument does not support reversal. *See id.*

*Oliva's Refusal of Breathalyzer*

During the State's closing argument, it made the following statement about why Oliva refused to submit to a Breathalyzer exam on the night of his arrest:

> You heard the defendant tell you himself, I didn't know if three glasses of wine was enough to get me over the limit; so I didn't give the sample. That's what you heard from this defendant.

Oliva contends the State improperly made a misstatement of the evidence. Again, we disagree.

After reviewing the record, we hold the State's argument was a reasonable deduction from the evidence, drawn from exchanges between Oliva and the prosecutor during cross-examination. For example:

> Q: [D]id you think if you did give a sample when he asked you to that it would be over the limit?
>
> A: I have no idea. I have no way of knowing that.
>
> * * *
>
> Q: Well, is three glasses of wine enough to get you intoxicated?
>
> A: No.
>
> Q: Well, so if you gave a breath sample that degree is below the legal limit, wouldn't it—

A: I don't know that. I think two drinks can go over 1 – that .08, whatever the legal limit is. So I don't – I don't know that. So that's the problem, you know. You know.

Q: Better safe than sorry?

A: Well, it's not that. It's just that .08 I don't know if it's going to be two or three drinks. They say two beers probably close to over .8 [sic] so, and beer, you drink two beers and you can smell it right away and it doesn't mean that people [sic] is drunk, you know.

Q: I think what you're saying is you don't know whether or not two or three drinks is enough to get you over the limit?

A: I—I don't know that to be honest with you.

\* \* \*

Q: Why did you tell the trooper that you hadn't been drinking?

A: The reason because if I tell him two or three drinks it's, you know, be honest with you, it's not a winning situation, you know, if you telling the truth, the two or three, I told him, you know, oh, yeah, I had two or three but I'm not, I was very upset.

Although the State's exchange with Oliva did not result in direct answers, a reasonable deduction from the exchange is that Oliva declined the Breathalyzer because he was worried he would not pass, i.e., that he would be over the legal limit.

Accordingly, because the State's argument was a reasonable deduction from the evidence, we overrule this portion of Oliva's issue and hold the State's argument was proper. *See Brown*, 270 S.W.3d at 570.

_Oliva's Alcohol Tolerance_

The State also made the following statement about Oliva's "drink limit" with regard to his ability to drive safely.

What did we ask the defendant? What's your limit? How much does it take for you to not drink and drive? And he said I don't really know.

- 13 -

Oliva contends this jury argument was an improper misstatement of fact because Oliva testified his limit was actually six or seven drinks. We must again disagree.

The record reflects the State's closing argument was an accurate representation with regard to Oliva's response to questions about his drink limit. The "six or seven" drink figure referred to by Oliva in his brief actually refers to his wife's trial testimony, not Oliva's. Because the State's argument was an accurate summation of the testimony before the jury, it was not an improper argument. *See Brown*, 270 S.W.3d at 570. Accordingly, we overrule this portion of Oliva's argument.

*Improper Appeal for Sympathy*

The State made the following argument in response to Oliva's claim that the trooper should have advised him of the consequences of his decision to accept or refuse the Breathalyzer:

> I'd like to point out very briefly, I think you've heard some misstatements of the law in this courtroom during argument. This argument that if you blow under the legal limit, I'll let you go; but if you blow over the legal limit, I'm going to arrest you. That is called coercion. And if that trooper tried to do that to any defendant, he would lose his TCLEOSE license and he'd be sitting in front of a judge for coercing a defendant in obtaining evidence.

Oliva contends the State's argument was an improper appeal for sympathy for the trooper because "the testifying officer could lose his job had he informed Appellant of the consequences of providing a breathe sample." We disagree.

The record reflects the State's argument was merely a response to Oliva's closing argument. In his closing, Oliva's counsel argued "the officer didn't explain to him if you come in below the legal limit, we're going to get rid of the DWI . . . [s]o the consequences weren't fully given to Mr. Oliva." Therefore the State's argument, when taken in context, was a response to Oliva's closing argument because counsel for the State was merely trying to clear up "some misstatements of the law in this courtroom during argument." Because a response to arguments

made by opposing counsel is proper jury argument, we overrule this portion of Oliva's issue. *See*

*Brown*, 270 S.W.3d at 570.

*Providing Information to DWI Suspect*

During closing argument, the State made the following statements that Oliva contends are

unsupported by the evidence:

> They have standard language that these troopers are required to read from and that's the DIC 24 and they can't deviate from it. . .

> If they start saying if you do this, this will happen; if you do that, that will happen. They can't do it. No police officer can do something to coerce evidence from a defendant by trying to explain to them or use any kind of trickery about what's going to happen to them if they give evidence. That doesn't happen.

Oliva contends these statements constituted improper jury argument because the limitations on

what a police officer can or cannot say to a DWI suspect are not supported by the record.

The record reflects the State's argument was merely a continuation of its response to

Oliva's closing argument that Trooper Williams was withholding important information from

Oliva on the night of his arrest. The information provided in the State's argument provides the

"why" for Trooper Williams's actions. As stated before, it is proper jury argument to respond to

the arguments of opposing counsel. *See Brown*, 270 S.W.3d at 570. Accordingly, we hold the

argument was not improper and overrule this portion of Oliva's complaint.

*"Arouse the Passion of the Jury"*

During closing argument, the State made the following statements to the jury when arguing

the danger drunk driving presents to the community:

> Being dangerous and being intoxicated, that's what this case is about. And you don't have to take my word for it, you can take the defendant's word for it. Do you drink and drive? No, it's dangerous. It's dangerous. Y'all, you don't have to take my word for it. You go home and look at your newspapers.

> You go home and you read and you listen and hear about the innocent victims whose lives are destroyed by intoxicated drivers every single night of the week.

> Texas, I wouldn't be surprised if we have the highest DWI fatality rate in the entire country. And I'm proud of Texas, I'm proud of our state but I'm not proud of that. I'm not proud of y'all having to go and look in the newspapers every single day and hear about victims whose lives are destroyed by intoxicated drivers.

Oliva contends these were improper arguments because they asked the jury to go outside the record and were designed to improperly inflame the passions of the jury.

The State may not use closing arguments to present evidence that is outside the record because "[i]mproper references to facts that are neither in evidence nor inferable from the evidence are generally designed to arouse the passion and prejudice of the jury and, as such, are inappropriate." *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011), *cert denied*, 121 S.Ct. 1099 (2012). In *Freeman*, the State argued to the jury the defendant attempted "to commit the worst criminal act on law enforcement ever in the United States' history," when he killed a game warden in a shootout with seven officers. *Id.* The Court of Criminal Appeals held this argument was improper because it referred to facts that were neither in evidence nor inferable from the evidence. *Id.*

Here, the State's argument directed the jury to look at evidence outside of the record and was clearly designed to arouse the passion of the jury. Although it is no mystery drunk driving is dangerous, and Oliva admitted as much — "[i]t's just like it's dangerous man, to be driving drunk" — the factual ubiquity of its dangerous side effects on the community was not presented as evidence before the jury. The State argued multiple times that drunk driving claims victims daily, and even went as far as suggesting Texas has the highest DWI fatality rate in the entire nation. Surely knowing the evidence did not directly support these assertions, the State directed the jury to look outside the evidence before them to the local newspapers for validation. We hold, especially given the emotional nature of the subject matter, the State's arguments about the

ubiquity of drunk driving's harms were outside the evidence presented at trial and were designed to arouse the passion and prejudice of the jury. *See id.*

The State counters that its jury argument was a plea for law enforcement. A proper plea for law enforcement urges the jury to be the voice of the community, which includes a prosecutor's request for the jury to "represent the community" and "send a message." *Harris v. State*, 122 S.W.3d 871, 888 (Tex. App.—Fort Worth 2003, pet. ref'd). Here, the statements made by the State do not call for action on behalf of the community, but rather call for the jury to improperly consider evidence outside of the record. *See Freeman*, 340 S.W.3d at 728. Although the State did in fact make a proper plea for law enforcement later in its closing,[2] it did not do so here. *See Harris*, 122 S.W.3d at 888. Accordingly, we must now determine whether the State's improper reference to facts outside of the evidence harmed Oliva. *See Gallo*, 239 S.W.3d at 767.

As we held before, even in consideration of the potential harm from previous improper argument in the same closing by the State, the certainty of Oliva's conviction based on the evidence is such that his substantial rights were not affected by the State's reference to facts outside the record. *See Freeman*, 340 S.W.3d at 728. The evidence before the jury included Oliva's admission he was drinking on the night of his arrest, exposing that he lied to Trooper Williams, and that he failed each of the three standardized field sobriety tests at the scene. Accordingly, we hold the

---

[2] The State encouraged the jury to act on behalf of the community when it argued:

> [Drunk driving,] [i]t's too common in Texas. Things like that are too common. It should be uncommon. It should be unheard of that somebody would be arrested for having too much alcohol to drink; that somebody would get out on the road, dangerous, that somebody can't even stand one – one leg without almost falling over because of how much alcohol – alcohol they had. But the only way things like that are going to stop, the only way it's going to be unheard of is for *jurors to hold defendants accountable*, no matter who they are and what they've done, *hold them accountable when they break the law*. And tell defendants you're not going to drive while intoxicated. Not in Texas. Not anymore. And that's what y'all need to do in this case.

(Emphasis added). Unlike the challenged statements, the argument above properly asks the jury to act on behalf of the community. *See Harris*, 122 S.W.3d at 888.

evidence supporting Oliva's conviction is such the State's improper argument does not support reversal.  *See id.*

## CONCLUSION

Based on the foregoing, we overrule Oliva's issues.  Accordingly, we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish