**AFFIRM; and Opinion Filed June 27, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00045-CR

### MAURICIO CABRERA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F10-57867-N**

## OPINION

Before Justices Lang-Miers, Myers, and Lewis
Opinion by Justice Lewis

A jury found appellant Mauricio Cabrera guilty of aggravated sexual assault of a child under fourteen years of age. The trial court assessed his punishment at ninety-nine years confinement in prison. In four issues on appeal, Cabrera challenges the trial court's denial of his objections to the State's jury argument and general testimony of the State's expert witness. He also challenges the sufficiency of the evidence supporting his conviction. We affirm the judgment of the trial court.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The indictment in this case alleged that on or about the 1st day of December, 2009, Cabrera intentionally and knowingly caused the contact and penetration of the anus of a child, M.P., with his sexual organ, and at the time of the offense, M.P. was younger than 14 years of age. At the jury trial, Chayita Olivarez testified that she is the mother of four sons, including

M.P. Three of Chayita's sons lived with her; her oldest son lived with Chayita's mother, Rosa Olivarez. In 2009, Cabrera was the boyfriend of Chayita's sister, Rosie Olivarez. Cabrera and Rosie also lived with Chayita's and Rosie's mother.

Chayita testified that when M.P. was eight or nine years old, she noticed that M.P. was acting differently—he kept to himself and would not play with his brothers. When she asked him what was wrong, he would just look down and not respond. Chayita asked her cousin, Elena Zavala, to talk to M.P. Chayita testified that she took M.P. to Elena's house. Elena called Chayita to let her listen to the conversation as she talked to M.P. After overhearing the conversation between M.P. and Elena, Chayita was very upset and went to talk to M.P. She then took him to Children's Medical Center to be examined and also called the police.

Elena Zavala testified that Chayita asked her to talk to M.P. because she had a good relationship with M.P. Elena testified that M.P. started crying and then told her that when he was at Aunt Rosie's house, Cabrera "put his thing in his boo-boo," meaning his penis in M.P.'s anus. M.P. told Elena that the incident happened in the living room when everyone was in the backyard. Elena testified that M.P. was not clear on the date of the offense.

M.P. testified that the day the incident occurred, he was walking through his grandmother's house to get some sticks for a game he was playing with his brothers in the backyard. His grandmother was gone and his Aunt Rosie was at the store. According to M.P., as he walked through the house, Cabrera opened his bedroom door and grabbed him. M.P. testified that he was in the living room when Cabrera grabbed him around the ribs and pulled his pants down. M.P. testified that he tried to get away but Cabrera held him with one hand and tried to put his "winky" into M.P.'s "butt." M.P. testified that after Cabrera stopped, he pushed M.P. away and went back into his bedroom. M.P. ran out the front door of the house. M.P. said he was mad but he did not tell anyone because he was afraid his mother would yell at him. M.P.

said that a couple weeks later, he told his Aunt Elena what happened and then talked to his mother. M.P. said that he also went to the doctor and spoke with a lady at "House."

Detective Jose Cerda with the Child Exploitation Division of the Dallas Police Department investigated M.P.'s case. He explained that he interviewed the reporting witness, Chayita Olivarez, and other witnesses such as Elena Zavala and M.P.'s grandmother, Rosa Olivarez. He also arranged for M.P. to be interviewed by a forensic interviewer, Patricia Guardiola, from the Dallas Children's Advocacy Center. Cerda testified that during the forensic interview of M.P., Cerda was able to watch the child's interview from behind mirrored glass and determine if there was an outcry from the child. Cerda also testified that M.P. was unable to identify the specific date when the incident occurred; however, based on information gathered in the forensic interview and Cerda's interviews with witnesses, Cerda chose the date of December 1, 2009.

Patricia Guardiola, a forensic interviewer at the Dallas Children's Advocacy Center (CAC), testified that she interviewed M.P. Guardiola stated that M.P.'s answers were consistent with his age and development level. Guardiola testified that M.P. made an outcry of sexual abuse and was able to give her details of what happened. She stated that M.P. circled and identified the body parts on a diagram. She said M.P. was able to give the person's name and talked about the person having a tattoo on his neck and arm.

Amanda Mlinarich, a clinical supervisor at CAC, testified that once a child has made an outcry of abuse, they are referred to counseling with the CAC therapy department. Mlinarich testified that in the majority of the child abuse cases that were referred to CAC, the child abuser was someone the child knew and trusted. Mlinarich testified that it was very common for children to delay in giving an outcry for several months. She also testified that children do not always remember everything at once and may even forget things over time. Mlinarich testified

that even if children forget details over time, the children remember the actual traumatic event. Mlinarich had two counseling sessions with M.P. and testified that M.P. was able to acknowledge why he was at a counseling session at CAC; however, he was quiet, reserved, and did not open up to Mlinarich.

Cabrera did not testify at trial. At the close of evidence, the trial court denied Cabrera's motion for directed verdict. The jury found him guilty as charged. The trial court assessed punishment at 99 years confinement. The trial court overruled Cabrera's motion for new trial and Cabrera now appeals the trial court's judgment.

## II. IMPROPER JURY ARGUMENT

### A. STANDARD OF REVIEW

We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Proper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to opposing counsel's argument, and (4) plea for law enforcement. *See Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011); *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). When examining challenges to jury argument, we consider the remark in the context in which it appears. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

### B. ELECTION NOT TO TESTIFY

In his first issue, Cabrera contends the prosecutor improperly commented on Cabrera's election not to testify, and the trial court erred in overruling his objection to the prosecutor's comment. During the State's closing argument, the prosecutor stated:

> The investigator told you that anybody can be a molester. Anybody. He also said – the burden is on the State, but they do have subpoena power, and they do have the right to call witnesses. And they even said we didn't call her either. No one has gotten on that stand and said it didn't happen.

Cabrera's counsel objected to the argument as being a "comment on his Fifth Amendment right" and the trial court overruled the objection. On appeal, Cabrera argues that the prosecutor's statement can only be construed as a comment on Cabrera's failure to testify at trial. In response, the State argues that Cabrera's contentions take the comment out of context and attempt to confuse the issue. The State contends its remark regarding subpoena power was clearly commenting upon Cabrera's failure to produce testimony other than his own.

"Prosecutorial comment on the absence of evidence is proper so long as 'the language can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony.'" *Bible v. State*, 162 S.W.3d 234, 249 (Tex. Crim. App. 2005) (quoting *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995)). An appellate court looks at the challenged language from the jury's standpoint and determines whether the comment "was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). It is not sufficient that the language used might impliedly or indirectly be so construed. *Busby v. State*, 253 S.W.3d 661, 666 (Tex. Crim. App. 2008) (citing *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007)). Reversal is not required where the language can be reasonably construed as referring to a defendant's failure to produce testimony or evidence from sources other than himself. *Livingston v. State*, 739 S.W.2d 311, 338 (Tex. Crim. App. 1987).

In the present case, the State's argument was not an improper comment because it did not require Cabrera to personally rebut the State's argument. *See Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App. 1999); *Harris v. State*, 122 S.W.3d 871, 884 (Tex. App.—Fort Worth 2003, pet. ref'd). On the contrary, as evidenced by the reference to the defense's "subpoena power," the State's comment specifically pointed out the lack of testimony from other witnesses

concerning any motive for Chayita, Elena, and M.P. to falsely accuse Cabrera of aggravated sexual assault. *See Harris*, 122 S.W.3d at 884 (citing *Fogle v. State*, 988 S.W.2d 891, 895 (Tex. App.—Fort Worth 1999, pet. ref'd) (recognizing a defendant need not subpoena himself in order to secure his own testimony)). On this record, we conclude the comment was merely a summation of the evidence presented at trial, coupled with an argument that the jury should not be concerned with evidence not presented at trial. We decide Cabrera's first issue against him.

## C. REQUEST THAT JURORS PLACE THEMSELVES IN VICTIM'S SHOES

In his second issue, Cabrera argues the trial court erred in overruling his objection to the prosecutor's improper request that jurors place themselves in the victim's shoes. At trial, the State's closing argument began as follows:

Mr. Varney: May it please the Court, Your Honor.

The Court: Mr. Varney.

Mr. Varney: Just for a moment be in [M.P.]'s shoes. You don't know if you should tell right away, because you may be in trouble. They may think it's your fault, because you yourself think this happened because it's your own fault.

Mr. Peale: Judge, I'm going to object that's an improper argument putting yourself in the complainant's shoes.

The Court: Overruled.

Cabrera contends that it is improper for a prosecutor to ask members of the jury to place themselves in the shoes of the victim. The State responds that when considered in context, the statement was a summary of the evidence and a plea for law enforcement.

We recognize that it is improper for a prosecutor to ask jurors to place themselves in the shoes of the victim of the charged offense, or in the shoes of others affected by it. *See Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985); *Arocha v. State Farm Mut. Auto. Ins. Co.*, 203 S.W.3d 443, 447 (Tex. App—Houston [14th Dist.] 2006, no pet.); *Chandler v. State*, 689 S.W.2d 332, 334 (Tex. App.—Fort Worth 1985, pet. ref'd). However, when such arguments do

not invite juries to abandon their objectivity and make decisions on improper grounds, they can be acceptable.  *See Torres v. State*, 92 S.W.3d 911, 922 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *Linder v. State*, 828 S.W.2d 290, 303 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (prosecutor's argument asking jurors to imagine what it was like to be the victim was a summation of the evidence before the jury, was more focused on the actions of the defendant and the reactions of the victim, not the jurors themselves, and as such, was not improper).

In the present case, the prosecutor asked the jury to put themselves in the shoes of the victim in deciding whether to tell someone what had happened to him.  There were no repeated urgings for the jury to put themselves in the shoes of the victim.  Taken in context, the argument did not ask the jury to abandon their objectivity by considering the case from an improper viewpoint, but instead was more of an explanation for the delayed outcry by the victim. Accordingly, we conclude the argument did not exceed the permissible boundaries for a jury argument.  *See Freeman*, 340 S.W.3d at 727; *Brown*, 270 S.W.3d at 570.  We overrule Cabrera's second issue.

### III.  EXPERT WITNESS TESTIMONY

In his third issue, Cabrera asserts the trial court erred in overruling his objections to the testimony of Mlinarich, the State's expert witness.  Cabrera complains that testimony offered by Mlinarich was only general information, not specific to the case, and not relevant to the issues. Cabrera also disputes the reliability of Mlinarich's opinions.  We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  A trial court abuses its discretion if it acts without reference to any guiding rules and principles.  *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  A trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement.  *Bigon*

*v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008); *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002).

In determining whether expert testimony should be admitted, the trial court is guided by Rule 702 of the Texas Rules of Evidence. TEX. R. EVID. 702. Expert testimony is admissible if it assists "the trier of fact to understand the evidence or to determine a fact in issue." *Id*. Expert testimony that provides useful information to aid the jury in evaluating the testimony of another witness is admissible. *Burke v. State*, 371 S.W.3d 252, 259 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd); *Bryant v. State*, 340 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). When addressing fields of study other than the hard sciences, such as the social sciences or fields that are based primarily on experience and training, the appropriate questions for determining reliability are: "(1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field." *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999); *see also Russeau v. State*, 171 S.W.3d 871, 883 (Tex. Crim. App. 2005).

Prior to Mlinarich's testimony at trial, the trial court conducted a rule 705 hearing to allow defense counsel to examine Mlinarich with respect to her expert testimony. *See* TEX. R. EVID. 705(b). Both parties questioned Mlinarich regarding her qualifications and opinions. Mlinarich testified that she is a clinical supervisor and therapist at CAC, has a bachelor's degree in psychology, a master's degree in counseling and development, and has been licensed in Texas as a professional counselor for over seven years. She participates in continuing education classes. As a therapist, she has seen over three hundred children as clients. She is familiar with,

and keeps current on, the literature and research in the field of child sexual abuse. Further, Mlinarich has been qualified and testified in court as an expert on several occasions.

Mlinarich testified that her opinions were based on her training and experience in matters of child sexual abuse. Mlinarich testified regarding delayed outcry and how child victims have different reactions to being abused. She testified regarding the wide range of symptoms and behavioral changes in children who have been abused. She also testified how children react to talking about being abused, how children remember or forget details of the abuse, and the difficulties for child victims testifying about the abuse in front of the alleged abuser. At the conclusion of the hearing, defense counsel objected to Mlinarich's testimony, asserting that her expert opinions were general opinions and not case specific opinions as to M.P. Defense counsel also objected to the reliability of Mlinarich's opinions. The trial court overruled Cabrera's objection to Mlinarich's proposed testimony, finding Mlinarich's testimony was "classical 702 testimony that is specialized and scientific" and would assist the jury to understand the evidence or to determine the facts at issue.

Based on the record before us, we conclude the State met the requirements of *Nenno*. *See Nenno*, 970 S.W.2d at 561. Thus, the trial court did not abuse its discretion in admitting Mlinarich's expert testimony. *Martinez*, 327 S.W.3d at 736. Cabrera's third issue is overruled.

## IV. SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Cabrera challenges the sufficiency of the evidence to support his conviction. Cabrera argues the evidence is insufficient because the testimony given by M.P. and other witnesses was not consistent, there was no determination as to when the assault occurred, and there was no physical evidence or eyewitness testimony.

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011).

–9–

We examine all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the trial court's determinations of witness credibility and weight of the evidence, and may not substitute our judgment for that of the fact finder. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise*, 364 S.W.3d at 903.

A person commits aggravated sexual assault of a child if the person intentionally or knowingly causes his sexual organ to penetrate or contact the anus of a child younger than fourteen years of age. TEX. PENAL CODE § 22.021(a)(1)(B)(i), (a)(1)(B)(iv), (a)(2)(B) (West Supp. 2013). The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2013); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd).

M.P. testified that when he was nine or ten years old, Cabrera grabbed him around the ribs, pulled down his pants, and tried to put his "winky" in M.P.'s "butt." M.P.'s testimony regarding his assault and outcry was corroborated by both Elena Zalava and Chayita Olivarez. There were inconsistencies in the testimony as to the exact dates. However, we presume the jury, when faced with conflicting evidence, resolved conflicts in favor of the prevailing party. *Isassi*, 330 S.W.3d at 638. The jury, as the trier of fact, is the sole judge of the credibility of the

–10–

witnesses and of the strength of the evidence, and the jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Wise*, 364 S.W.3d at 903. Viewed in the light most favorable to the verdict, we conclude the jury could have found the essential elements of the offense of aggravated sexual assault of a child beyond a reasonable doubt. We decide Cabrera's fourth issue against him.

## V. CONCLUSION

Having decided all of Cabrera's issues against him, we affirm the judgment of the trial court.

/David Lewis/
_____
DAVID LEWIS
JUSTICE

Do Not Publish
Tex. R. App. P. 47

130045F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MAURICIO CABRERA, Appellant

No. 05-13-00045-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F10-57867-N.
Opinion delivered by Justice Lewis.
Justices Lang-Miers and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of June, 2014.